ADKINS, Justice.
We have for review by petition for writ of certiorari an order of the Florida Industrial Commission reversing an order of the Judge of Industrial Claims.
Claimant, an employee of respondent Minute Maid Corporation, injured his back *261 while attempting to pick up the wheels of a trailer which was loaded with fruit. While attempting to set the trailer in the fifth wheel of the tractor, claimant experienced a sharp pain in the lower part of his back.
A hearing was held on December 9, 1969. The Judge of Industrial Claims found that claimant had suffered an injury by accident arising out of and in the course of his employment and that he suffered a IS per cent permanent partial disability rating of the body as a whole on an organic basis, but that claimant was permanently and totally disabled based on a loss of wage-earning capacity and that respondents should pay compensation benefits for total disability. He further found that respondents were to continue to furnish remedial support and palliative medical treatment as the nature of the injury may require. Attorneys’ fees were awarded for representation of the claimant.
Upon review, the Industrial Relations Commission entered an order reversing the Judge of Industrial Claims, stating that the Commission could not find competent substantial evidence in the record to "support the judge’s findings that, as a result of the claimant’s 15 per cent permanent partial disability of the body as a whole, he is now totally disabled based on a loss of wage earning capacity.” The Commission stated that claimant had failed to establish his prima facie case of permanent total disability based on the evidence in the record.
Claimant, 42 years of age, was born in Alabama and completed the fifth grade. His entire work experience had been limited to that of a truck driver and a laborer, as he has no specialized skill, trade or training. Claimant has been unable to work since the date of the accident, but he did perform some light duties for the same employer as a truck driver for a period of eight weeks during the interval between January and May of 1967.
Claimant testified he was unable to perform light-type work due to the pain in his back and leg, and that he had not even done his own yard work since the accident; that he could drive for only short distances of two or three miles for his back would pain him if he sat in the same position for any length of time. Claimant stated that following his discharge by Dr. F. DeWitt Stanford, the treating physician, in January, 1968, he applied for work in several filling stations. Also, he applied to the Division of Vocational Rehabilitation of the State of Florida for assistance in retraining so that he could secure lighter work. Claimant was interviewed by the Rehabilitation Supervisor of the Industrial Relations Commission and indicated a willingness to undertake a pre-vocational evaluation, provided transportation could be furnished. Claimant made little or no attempt to secure employment after his deposition had been taken by respondents on June 13, 1968.
The medical evidence showed that claimant sustained a sprain of the lumbosacral joint and that he had a narrowing of the intervertebral disc between the fifth lumbar disc and the sacrum.
Dr. Stanford assigned to claimant a temporary total disability rating of 15 per cent of the body as a whole, which was confirmed by later examination by Dr. Bright McConnell, Jr. Dr. Stanford on at least ten occasions performed lumbosacral nerve blocks and on each occasion the symptoms of low back pain and radiating pain down the left lower extremity were relieved for a short period of time. The Judge of Industrial Claims indicated in his order that this fact indicated to him the presence of nerve root pressure or pathology.
During the period from the accident until the hearing, claimant complained of symptoms of back and leg pain, numbness and loss of sensation in the lower left ex-, tremity, weakness, nervousness, headaches and inability to sleep. Dr. Stanford attached a significance to the consistency of these complaints, stating that a patient with a functional overlay or psychic prob *262 lem would normally have changes in his complaints from one examination to the next. However, Dr. Stanford stated that the symptomatology of claimant stayed about the same all during the period of time that he treated him. There were some increases in pain from time to time, but the symptoms themselves varied very little and no significant changes of claimant’s symptoms were ever present. Dr. Stanford further stated that the patient with functional overlay would often change symptomatology, but the fact that claimant’s symptoms remained just about the same would have some significance to him that they might be based on organic pathology, although he could never pinpoint the orthopedic pathology claimant had, except for tenderness over the lumbo-sacral joint.
Dr. Stanford placed certain limitations on claimant strictly from a medical standpoint which included working no more than six to seven hours a day, lifting nothing over 85 pounds, doing no work that would require much stooping or bending or climbing stairs, and doing no work that would require climbing a ladder.
The Judge of Industrial Claims found that, although claimant was apparently poorly motivated and had a low pain threshold as a result of the injury, claimant could only walk short distances, was unable to drive his car for distances of more than two or three miles without resting or changing positions, could not perform work requiring much stooping, lifting, or climbing up stairs or ladders, and was unskilled and untrained for work other than a truck driver or laborer.
The Judge also found that claimant’s work history prior to the accident was excellent. He had worked for the same employer from seven to nine years with no .loss of time or work other than for several prior injuries. The Judge also found that there was no indication of any malingering on the part of claimant and pointed out that the treating physician accepted claimant’s continuing complaints as being real.
The Judge then found that claimant had established a prima facie case that he could not uninterruptedly do even light work owing to physical limitations, pain and discomfort due to the accidental injury and that the burden was then shifted to the respondents to show that claimant was able to perform certain types of work within his physical limitations and that such suitable work was available to him. There was no evidence presented that claimant could presently perform any given type of work or that there was suitable work available for him. The only evidence presented by respondents in this regard was testimony that claimant should be able to perform certain types of work. However, the Judge observed that these opinions were based upon objective physical findings and limitations and did not take into account the effects of claimant’s suggestive complaints of pain and the limiting effect on claimant’s work activity.
The only question involved is whether there is competent substantial evidence in accord with logic and reason to support the finding of permanent total disability based upon loss of wage-earning capacity when claimant received only a 15 per cent permanent partial disability rating of the body as a whole.
As stated in Harris v. Lenk, 224 So.2d 283 (Fla.1969):
“We are concerned here with decreased earning capacity which sometimes may not be proportional to general physical functional impairment. No one standard is conclusive in the determination of the degree of incapacity to earn the same wages after the injury as prior to the injury. See Ball v. Mann, 75 So.2d 758 (Fla.1954). Because of the variables taken into consideration, the percentage of loss of earning capacity is not ascertainable with mathematical precision. It necessarily follows that an approximation of the percentage of wage loss resulting from permanent partial disability is permissible if fairly supported by competent and substantial evidence. See 100 *263 C.J.S. Workmen’s Compensation § 631, p. 928. The assessment of loss of earning capacity must always be a prediction about the indefinite future and it is not only proper but necessary that the judge consider whether the claimant employee is actually able to perform the requirements of the type of work she was doing at the time the disability occurred. The knowledge gained from personal observation of the claimant may be just as an important factor as the evidence produced by the testimony, depositions and exhibits in determining the percentage of loss of wage earning capacity.” (p. 285)
In Ball v. Mann, 75 So.2d 758 (Fla.1954), this Court also said:
“[Djecreased earning capacity is not necessarily proportional to general physical functional impairment. See Crow v. Industrial Commission, 104 Utah 333, 140 P.2d 321, 148 A.L.R. 316, 318. And no one standard is conclusive in the determination of the degree of incapacity to earn the same wages as prior to an injury. Instead there should be taken into consideration, among other things, such variables as the injured employee’s physical condition, age, industrial history, education, and inability to obtain the type of work which he can do insofar as affected by the injury.” (p. 760)
The determination of the loss of wage-earning capacity is to be made by the trier of fact after due consideration of all the evidence, both lay and medical. The Judge of Industrial Claims is the sole trier of fact and his findings are binding upon the Industrial Relations Commission when they are supported by competent substantial evidence. See Painter v. Board of Public Instruction of Dade County, 223 So.2d 33 (Fla.1969); Williams v. Alfred S. Austin Construction Company, 224 So.2d 280 (Fla.1969) ; Payette v. Gulf stream Air-Conditioning, Inc., 224 So.2d 686 (Fla.1969); and Tracy v. Americana Hotel, 234 So.2d 641 (Fla.1970).
This Court pointed out in Herring v. Jackson Bearing & Supply, Inc., 212 So.2d 768 (Fla.1968), that even though the reviewing court might have arrived at factual findings contrary to those of the trial judge, this is not the nature of appellate review.
Respondents rely upon Trieste v. Anchell, 143 So.2d 673 (Fla.1962), where claimant, while working as a carpenter, sustained a fracture of the left heel. He was discharged by the treating physician with a rating of 45 per cent disability of the left foot. Claimant sought benefits which resulted in the entry of an order finding claimant to be permanently and totally disabled. This Court held there was no competent substantial evidence in the record to support the finding that the injury to the left foot and resulting involvement of the back and right foot had caused the claimant to experience a total loss of wage-earning capacity. This Court, in discussing the evidence, said:
“The treating physician testified that while claimant could not work as a carpenter, he could do some type of work. Claimant testified that he had not tried to work at any job, although he had tried to do odd jobs around his landlady’s house and had been unable to do them. He stated that he might be able to hold a job ‘if it is sitting down part of the time and standing up part of the time.’ He stated that he had been to the Florida State Employment Service about two weeks prior to the hearing at which he testified but they had nothing for him.
“Claimant’s landlady and a friend testified as to what claimant could and could not do as they had observed him.”

“In the instant case claimant made no effort to obtain employment until about two weeks prior to the hearing. There is no evidence that there is no market for the labor which he can perform. As the full commission pointed out, there was a dearth of evidence ‘by any witness qualified to evaluate claimant’s employment potential.’ ” (p. 675)
*264 The factual situation in the case sub jud-ice is entirely different. Claimant did suffer a back injury which was quite disabling. He was uneducated, with little work experience except that of a truck driver and laborer. Claimant testified he feared the loss of his home because he could not make the mortgage payments; that he received help from his relatives to try and keep the house; that his wife left the family residence and instituted suit for divorce; that he suffered a complete loss of libido since the accident; that he had tried yard work unsuccessfully; that he applied at several filling stations for work; that he applied to the Division of Vocational Rehabilitation of the State of Florida for assistance in retraining; that he had been interviewed by the Rehabilitation Supervisor of the Industrial Relations Commission. There was no indication that claimant was malingering.
Considering the nature and extent of claimant’s residual anatomical disability as related to his age, limited education, and employment history, there exists competent substantial evidence to warrant a finding that a reasonable stable labor market commensurate with claimant’s ability to perform regular employment is unlikely to exist. See Ross v. Roy, 234 So.2d 99 (Fla.1970). In order to obviate a determination that claimant was permanently totally disabled, it was incumbent on respondents to show that some form of regular employment is in fact within reach of claimant. Respondents have made no such showing in the present case.
This conclusion does not foreclose a future showing by respondents that there has been a change in circumstances demonstrating claimant is no longer permanently and totally disabled and is capable of obtaining gainful employment. Fla.Stat. § 440.28, F.S.A., provides respondents such a remedy by way of petition for modification.
The findings of fact by the Judge of Industrial Claims were supported by competent and substantial evidence, so the order of the Industrial Relations Commission is quashed and the cause is remanded with directions to reinstate the compensation order of the Judge of Industrial Claims.
It is so ordered.
ROBERTS, C. J., ERVIN, CARLTON and McCAIN, JJ., concur.
BOYD, J., dissents with opinion.
DEKLE, J., dissents and concurs with BOYD, J.