322 So.2d 30 (1975)
GULF OIL COMPANY et al., Petitioners,
v.
William H. BEVIS et al., Respondents, and
McKenzie Tank Lines, Inc., et al., and Motor Fuel Carriers, Inc., Intervening Respondents.
Nos. 45152 to 45154, 45169, 45156.
Supreme Court of Florida.
October 17, 1975.
Rehearings Denied December 4, 1975.
*31 Edward C. Adkins and William D. Keettel, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for Gulf Oil Co., Shell Oil Co. and Exxon Co.
James E. Wharton and David J. Fuller, Akerman, Senterfitt, Eidson & Wharton, Orlando, for Fleet Transport Co., Inc.
George L. Varnadoe, Holland & Knight, Tallahassee, for Union Oil Co. of California.
William L. Weeks and Donald R. Alexander, Tallahassee, for the Florida Public Service Commission.
W. Guy McKenzie, Jr. and Thomas F. Panebianco, Carswell, McKenzie, Dean & Owen, Tallahassee, for McKenzie Tank Lines, Inc.
Edwin L. Mason, David B. Erwin and Philip S. Parsons, Mason & Erwin, Tallahassee, for Motor Fuel Carriers, Inc.
Richard H. Wilson, Tampa, for Redwing Carriers, Inc. and Petroleum Carrier Corp. of Florida, Inc., amicus curiae.
BOYD, Justice.
These causes are before us on petitions for writ of certiorari to the Public Service Commission.[1]
In these consolidated cases we are primarily reviewing Order No. 11045 of the Public Service Commission, dated November 6, 1973, which order changed the incentive rate[2] of shippers from fifteen percent to five percent. Also before us is Order No. 11221 which denied petitioners' request for reconsideration of Order No. 11045. Supersedeas was posted pending this review.
The crucial question is whether the Public Service Commission acted according to law in changing the incentive rate from fifteen percent to five percent in Order No. 11045. Objections to the prior fifteen percent discount came from trucking companies which were, generally, too small to enter into such agreements. They complained that discrimination against them arose by unfair competition because shippers would use the big transportation companies which were able to provide service at cut-rates. After taking testimony and relying upon its own knowledge of conditions, the incentive rate change was made by the Respondent Commission.
Petitioners argue that the Commission acted without competent and substantial evidence before it. It was argued that the effect of Order No. 11045 was to substantially eliminate incentive rates, since shippers probably would not agree to use a vehicle one hundred hours per week for a mere five percent reduction in rates.
*32 Petitioners rely upon this Court's definitions of competent and substantial evidence in Public Service Commission proceedings, which definitions still control. In 1931 in a major case, Florida Motor Lines, Inc. v. State Railroad Commission,[3] this Court said:
"... If there is substantial competent evidence that is legally sufficient to support the findings and conclusions, and no rule of law was violated in the proceedings, and the whole record does not show an abuse of authority or arbitrary action, the findings and conclusions of the commission will not be set aside ... even though the reviewing court might have reached different conclusions on the evidence... ."
In the much-cited case of De Groot v. Sheffield,[4] this Court defined what it meant by "competent substantial evidence" when used in the context of judicial review of agency action:
"We have used the term `competent substantial evidence' advisedly. Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion . .. In employing the adjective `competent' to modify the word `substantial,' we are aware of the familiar rule that in administrative proceedings the formalities in the introduction of testimony common to the courts of justice are not strictly employed .. . We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the `substantial' evidence should also be `competent.' ..."
We have applied the above standards to the evidence in the record and feel the Commission had competent and substantial evidence along with its own knowledge and expertise to arrive at a legally sufficient conclusion in the matter. It is our opinion that reasonable men could have reached this or a different result, but in the absence of a showing of insufficient evidence or of a departure from the essential requirements of law, we are compelled to sustain the orders of the Commission.
Section 350.12(2)(m), Florida Statutes, provides:
"... Every ... order heretofore or hereafter made by the commissioners shall be deemed and held to be within their jurisdiction and their powers, and to be reasonable and just... ."
Thus, the order on review carries a presumption of correctness. Further, the scope of this Court's review and the petitioners' burden has been enunciated on a number of occasions by this Court. It was succinctly summarized in the case of Tamiami Trail Tours, Inc. v. Carter[5] as follows:
"... It is only in those instances, as we have said on many previous occasions, where it is made clearly to appear to us that the Commission has done an illegal or unauthorized act, has exceeded its jurisdiction or failed to accord with the essential requirements of the law, that we are authorized to interfere with its actions. It is indeed a narrow corridor through which the petitioner must pass and we should be most circumspect not to transgress its limitations. Proper restraint in this connection on the part *33 of this Court clearly preserves the true historical purpose of the Courts and leaves the Commission the power effectively to function within its limited field of operation under the Constitution and Statutes."
The Public Service Commission is a creature of the Florida Legislature and its duties are primarily administrative, although it performs many quasi-judicial functions. If it is not doing the will of the Legislature as to public policy or if it is not otherwise serving the public as intended, it becomes a legislative function to modify its course of conduct. It is only in those limited instances in which violations of the legal standards mentioned above occur that this Court may modify or reverse its actions. We find no basis in the record to quash or change Public Service Commission Order No. 11045 or any other matters presently before us.
Accordingly, the petitions for writ of certiorari are denied.
It is so ordered.
ADKINS, C.J., ROBERTS, J., and FERRIS, Circuit Judge, concur.
ENGLAND, J., dissents with an opinion, with which OVERTON and SUNDBERG, JJ., concur.
ENGLAND, Justice (dissenting).
I respectfully dissent. This proceeding was initiated at the request of the conference of petroleum haulers, in order to obtain a 10% increase in all of their regulated rates. Subsequent to the commencement of the proceeding and at the request of one conference member, the Commission was asked to eliminate incentive rates entirely. The Commission eventually ruled that all rates except the incentive rate should be increased by 10%. The latter was reduced from 15% to 5%.
In the posture of this proceeding, those who sought to eliminate incentive rates have the burden of proof with respect to that change in the existing rate structure.[1] That burden is not met by unsupported opinion testimony of those advocating a result.[2] Even in an administrative proceeding, some relevant evidence must be developed to sustain the agency's conclusions.
The record of the Commission proceeding in this case indicates that the opponents of incentive rates produced no probative evidence whatsoever, and that the Commission impermissibly fashioned relief equivalent to revocation[3] upon unfounded expressions of personal opinion. The Commission has essentially acknowledged as much. After describing the pure testimony of independent dealers who oppose incentive rates, and after reciting that the record was essentially devoid of supportive figures or evidence, the Commission stated in Order No. 11221:
"We are faced, then, with opposing contentions on the part of two different segments of the public served by petroleum common carriers. The large major oil companies want to retain the 15% volume incentive discount rate while the smaller, independent petroleum marketers feel the incentive plan is discriminatory and that they cannot hope to get the lower hauling rate due to allocation and other current supply problems. Gasoline and fuel oil supplies are generally controlled by the major oil companies. It appears the independents are being squeezed on one end by supply problems and, on the other end by the necessity of paying a 15% higher hauling rate than their major oil company competitor. *34 The present allocation of fuel supplies by major refiners limits an independent marketer's ability to increase volume. Under allocation he cannot build sufficient gallonage to qualify for the 15% discount volume incentive hauling program."
These recitations, buttressed by concessions in the Commission's brief,[4] departed from the record of this proceeding in order to relieve the plight of small, independent marketers. The Commission's fear for their ability to survive and compete in today's energy-short economy is commendable. The Commission may not, however, depart from the essential requirements of law in a contested administrative proceeding in order to decide interesting social questions. The Commission, like all other agencies of government, is obliged to protect the public interest by using lawful procedures.[5]
It may be in the interest of the general public  small, independent marketers and energy consumers as well  to eliminate incentive rates entirely, but that issue is not before us. The Commission will require a new evidentiary proceeding to reach that result. This proceeding contains no competent evidence whatsoever to support a reduction or elimination of incentive rates, and the order of the Commission reducing incentive rates to 5% should be quashed.[6]
OVERTON and SUNDBERG, JJ., concur.
NOTES
[1] Article V, Section 3(b)(3), Florida Constitution; Sections 350.641 and 366.10, Florida Statutes; Rule 4.1, Florida Appellate Rules.
[2] Incentive rates are discount rates which the carriers may offer to shippers who agree to obligate themselves to use a carrier's vehicle not less than 100 hours per week in shipping his product. The discount has been 15% less than the otherwise prescribed lawful rate.
[3] 101 Fla. 1018, 1044, 132 So. 851, 862 (1931).
[4] 95 So.2d 912, 916 (Fla. 1957).
[5] 80 So.2d 322, 324 (Fla. 1955).
[1] See Clay Utility Co. v. Jacksonville, 227 So.2d 516, 518 (1st DCA Fla.App. 1969).
[2] The opponents' witnesses were not qualified as "experts" on incentive rates. Each acknowledged the lack of any experience using them.
[3] The evidence is uncontroverted that a 5% incentive rate is tantamount to none at all.
[4] In its brief to this Court, the Commission candidly concedes that "reliance upon [its] ratemaking expertise was necessary to reach the 5% rate and certainly its judgment played a large part, but that is necessarily the function of the Commission." As good as that judgment may be, it is no substitute for competent or substantial evidence.
[5] See Florida East Coast Ry. v. King, 158 So.2d 523, 525 (Fla. 1963).
[6] The scope of our review does not permit an opinion as to whether the existing 15% incentive rate should be increased or maintained on the basis of the evidence which was before the Commission.