329 So.2d 302 (1976)
CHICKEN'N'THINGS and Insurance Company of North America, Petitioners,
v.
Martha MURRAY and the Florida Department of Commerce, Industrial Relations Commission, Respondents.
No. 47034.
Supreme Court of Florida.
March 17, 1976.
*303 Marjorie D. Gadarian of Jones, Paine & Foster, West Palm Beach, for petitioners.
Lawrence U.L. Chandler, of Hamilton, James, Merkle & Young, Delray Beach, for respondents.
HATCHETT, Justice.
This case, which is indistinguishable[1] from the run of cases decided by the Industrial Relations Commission, presents the question whether the industrial claims judge's fact findings,[2] which the Industrial *304 Relations Commission upheld, should now be overturned. We decline petitioner's invitation to interject ourselves at random as the primary finder of fact in workmen's compensation cases, and deny the petition for writ of certiorari.
In Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla. 1974) (reh. den. 1975), the Court adopted "the traditional standard of `departure from the essential requirements of law,'" at 168, for reviewing decisions of the Industrial Relations Commission. As was there pointed out, this standard has been employed in other contexts, and has a well-defined meaning. The standard we recently decided to apply in cases like the one at bar is "the same standard currently applied in certiorari review of orders of the Public Service Commission and in interlocutory petitions and common law certiorari." Id.
The writ of common law certiorari is a means for review and correction of jurisdictional or other equally fundamental irregularities, and is not the proper procedure for challenging findings of fact, unless the fact-finding process has been marred by a departure from essential procedural requirements. In common law certiorari proceedings, findings of fact in the lower court are ordinarily conclusive. Metropolitan Life Insurance Co. v. Poole, 147 Fla. 686, 3 So.2d 386 (1941) ("It is not the province of this Court in reviewing a case on certiorari to go behind the judgment of the court below entered upon conflicting testimony." At 386.) An encyclopedia of Florida law states the rule as follows:
On certiorari, the reviewing court will not ordinarily review conflicting evidence. In other words, it is not the province of the reviewing court to go behind the judgment of the court below entered upon conflicting evidence. Thus, the reviewing court will not ordinarily weigh the effect of the evidence, or consider its probative force if the conflicting evidence is legally sufficient to sustain the judgment. It will not even determine the sufficiency of the evidence *305 if there was some evidence to support the verdict or judgment complained of, since to do so would confound the supervisory power of the reviewing court with its appellate jurisdiction. Nor will the higher court review the evidence to reconcile conflicting testimony. But the reviewing court will examine the record to determine whether there was any evidence at all to support the verdict or judgment, or whether there was such an absence of evidence, with resulting injury, as to amount to a departure from the essential requirements of the law. In doing so, the court will give the evidence a construction most favorable to the prevailing party.
5 Fla.Jur. Certiorari § 29 (1955) (footnotes omitted)
This is the standard for review which this Court decided in Scholastic Systems, Inc. v. LeLoup, supra, would govern in cases like the present one.
In appellate proceedings, trial judges' findings of fact are insulated against attack to a significant but somewhat lesser extent. We are bound by the trial court's view of the facts on appeal, unless the findings are clearly erroneous. Greenwood v. Oates, 251 So.2d 665, 669 (Fla. 1971); A.B.C. Business Forms, Inc. v. Gelvan, 300 So.2d 64 (Fla.App. 3d Dist. 1974); Hudson Pulp & Paper Corp. v. Butler & Co., 297 So.2d 103 (Fla.App. 1st Dist. 1974). When proceedings begun in an administrative agency reach this Court by petition for writ of certiorari, however, the showing necessary to overturn fact findings is greater than the showing an appellant must make. Not only are agency fact finders, like trial judges, closer to the evidence than we are, they are presumably better equipped, because of their expertise, to resolve conflicts in the evidence. Although we may believe that an agency's findings of fact are mistaken, we are not at liberty to disregard them, unless there is no competent evidence, or only insubstantial evidence, to support the findings. DeGroot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957); Tamiami Trail Tours, Inc. v. Carter, 80 So.2d 322, 324 (Fla. 1955). Cf. Federal Power Comm'n v. Florida Power & Light Co., 404 U.S. 453, 92 S.Ct. 637, 30 L.Ed.2d 600 (1972); NLRB v. Walton Mfg. Co., 369 U.S. 404, 407, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962); Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). This rule serves the legislative purpose to insulate agency decision making from interference by us, except where intervention is warranted because agency action has been arbitrary and capricious.
Like final orders of the Industrial Relations Commission, final orders of the Public Service Commission are initially judicially reviewable here. When orders of the Public Service Commission are challenged in this Court as being unsupported by the facts, this Court will uphold the orders even though it differs with the Commission's view as to the effect of the evidence as a whole, so long as there is competent substantial evidence to support the orders. Gulf Oil Co. v. Bevis, 322 So.2d 30 (Fla. 1975); DeGroot v. Sheffield, supra at 916; Tamiami Trail Tours, Inc. v. Carter, supra at 324. The same rule applied on review of orders of the Public Service Commission's predecessor, the Railroad Commission. See State ex rel. Railroad Comm'rs v. Florida East Coast Ry. Co., 67 Fla. 83, 64 So. 443, 448 (1914); Note, Judicial Review of Administrative Findings of Fact; The Doctrine of Jurisdictional Facts in Florida, 2 U.Fla. Law Rev. 86, 93 (1949). An early statement of the rule, quoted in part and cited with approval in Gulf Oil Co. v. Bevis, supra, reads as follows:
The findings and conclusions and orders thereon . .. may be reviewed on certiorari, but such review is not appellate to determine whether error was committed in such findings and conclusions or in the orders as where writ of *306 error or appeal is authorized or used. The review on certiorari is to determine whether the order as made is illegal as matter of law or was made without observing the provisions of law regulating the matters to be considered or the procedure for such findings and conclusions, or whether in its operation the order will violate organic or fundamental rights, or is merely arbitrary and without sufficient support in the evidence or proceedings had. If there is substantial competent evidence that is legally sufficient to support the findings and conclusions, and no rule of law was violated in the proceedings, and the whole record does not show an abuse of authority or arbitrary action, the findings and conclusions of the commission will not be set aside on certiorari even though the reviewing court might have reached different conclusions on the evidence.

Florida Motor Lines, Inc. v. State Railroad Comm'n, 101 Fla. 1018, 1044, 132 So. 851, 862 (1931).
We applied this rule in Mahler v. Lauderdale Lakes Nat'l Bank, 322 So.2d 507 (Fla. (1975), a case decided after Scholastic Systems, Inc. v. LeLoup, supra, which, like the present case, arose from the Industrial Relations Commission.
In Mahler, the Industrial Relations Commission reversed a determination of total permanent disability by the Judge of Industrial Claims. On petition here for writ of certiorari to review the Commission's order, this Court upheld the Commission, even though we indicated that we would also have upheld the Commission if it had not overturned the industrial claims judge's findings. Cf. Sentinel Star Express Co. v. Florida Public Service Comm'n, 322 So.2d 503 (Fla. 1975); Scheuerman v. Florida Real Estate Comm'n, 215 So.2d 29 (Fla.App. 1968). This illustrates the great deference due the Commission's fact finding under the standard adopted in LeLoup. Even in a case where we would have reached precisely the opposite conclusion from the evidence (if we had been the finder of fact) we are bound by the Commission's findings, unless they lack any substantial support in the record. Fact finding must be begun anew when there has been a breakdown in the original fact-finding process. But mere dissatisfaction with the result of the process is no justification for dishonoring the legislative judgment that the agency fact finders, rather than a second tier appellate tribunal like this Court, should have the responsibility and authority for resolving conflicting factual claims.
The fact findings in the present case are amply supported in the record. Dr. Cunningham (who did not testify himself) performed an electromyelogram which "showed definite evidence of an irritative process involving the fifth lumbar and first sacral nerve roots on the left side." Dr. Smith, whose testimony was generally accepted by the Judge of Industrial Claims, had treated the respondent before the accident out of which the present claim arose, and examined her some 31 times after her fall. Dr. Brandon, whose testimony as to respondent's medical condition was rejected where it conflicted with Dr. Smith's, saw respondent Murray on a single occasion. Every nonmedical conclusion of fact was predicated on uncontroverted evidence. The judge of industrial claims accepted Dr. Brandon's 50 per cent anatomical-functional rating as an accurate assessment of respondent Murray's physical condition. An anatomical-functional rating bears importantly on the question of wage earning capacity, although this rating of physical disability constitutes only one of several relevant factors. Port Everglades Terminal Co. v. Canty, 120 So.2d 596 (Fla. 1960); Dennis v. Brown, 93 So.2d 584 (Fla. 1957) ("It is settled in this state that the disability is determined not by the functional loss, but by the loss of wage earning ability." At 586.) The claimant in Gibson v. Minute Maid Corp., 251 So.2d 260 *307 (Fla. 1971) "suffered a 15 per cent permanent partial disability rating of the body as a whole on an organic basis." At 261. Taking other factors into account, the Court reversed the Industrial Relations Commission for failing to award Gibson compensation for permanent total disability. Accord, Ross v. Roy, 234 So.2d 99 (Fla. 1970) (claimant should have been adjudicated totally disabled where he had "20 per cent permanent partial disability of his body as a whole". At 100.)
A trial is a notoriously expensive way to resolve any dispute. The legislature has taken from the courts original jurisdiction over industrial accident claims and created a specialized agency for settling disputes arising out of such accidents. By removing these controversies from the court system and providing for their resolution in a more informal manner, substantial economies can be effected, making possible more compensation for injured workmen at less expense to their employers. Or so the legislature could reasonably have concluded. But administrative costs are increased rather than lessened if review of Commission proceedings in this Court involves relitigating facts which have already been found by the judge of industrial claims and which thereafter withstood attack in review proceedings before the Industrial Relations Commission.
Petitioner asks us to draw our own factual conclusions de novo from the cold record. To do so would only serve to encourage proceedings in this court to review purely factual questions; create additional uncertainty both for claimants and employers; and do considerable violence to the legislative purpose of creating a specialized fact finder for expeditious resolution of workmen's compensation cases. Accordingly, the petition for writ of certiorari is denied.
ROBERTS, Acting C.J., and ENGLAND, J., concur.
ADKINS, J., concurs with an opinion.
BOYD, J., dissents with an opinion.
ADKINS, Justice (concurring).
I concur in the opinion of the majority for the reasons stated therein and in my concurring opinion in Hughes v. Public Finance Service, Inc., 319 So.2d 18 (Fla. 1975). While the principal issue in Hughes was whether an appellate court departs from the essential requirements of law when it reverses a lower court's judgment which is supported by competent, substantial evidence, I stated there that the Industrial Relations Commission, acting as an appellate court, may not re-weigh the evidence and reverse the findings of the Judge of Industrial Claims if supported by competent, substantial evidence and that this Court's review by certiorari is limited to a departure from the essential requirements of law. There is no departure from the essential requirements of law sub judice and there can therefore be no review by this Court.
BOYD, Justice (dissenting).
Claimant, Martha Murray, is a 28-year old high school graduate who was employed as a short-order cook at the Pie-Tisserie, a division of Chicken'N'Things. On March 3, 1973, claimant slipped and fell in the kitchen of the restaurant, injuring her back. Claimant had previously suffered a similar back injury in 1970, as a result of which a herniated disc necessitated a laminectomy performed by Dr. William Smith. Dr. Smith, who treated her for the first back injury and the back injury from which this claim arises, testified regarding his treatment of the claimant. He stated that claimant had recovered well from her 1970 surgery; according to him, her disability due to the first accident was about 5%. After the second accident Dr. Smith saw her on March 5, 1973, and treated her conservatively until May when *308 he suggested that she have another laminectomy to relieve the pain. Claimant rejected further surgery. Following the compensable accident in March 1973, claimant was involved in an automobile accident in December; while she had some neck problems after that accident, she did not suffer any permanent disability as a result thereof. Dr. Smith testified that claimant could do a certain amount of lifting, and according to him, claimant is 50% disabled, 5% of which is attributable to the first accident. Dr. Smith testified that claimant can do some things, that she can work, that she could certainly be rehabilitated, and that he advised claimant to attempt to do some sort of work. Dr. James Brandon also testified at the hearing; after examining claimant Dr. Brandon recommended conservative, non-surgical treatment, such as the use of a back brace. With such a brace claimant would be able to lift pans and dishes ranging in weight from 20 to 25 lbs. Dr. Brandon suggested that claimant, who was overweight, reduce her weight as a means of alleviating her back complaints. Dr. Brandon gave claimant a 15% permanent partial disability.
Claimant's work experience includes working on a farm and as a short-order cook and dishwasher. When queried whether she was willing to take rehabilitative training in order to equip herself to do some sort of work, claimant stated she did not want to take any training because she figured she already had her education. She admitted that she refused to go to vocational rehabilitation. Upon professional testing claimant's literacy level was stated to be that of a second or third grade student. Claimant testified that she would not be willing to work even if she could find a job which did not require her to sit for long and where she could get up and walk around. She has not sought work since her accident at the Pie-Tisserie. If her workmen's compensation were cut off, claimant stated she would just have to ask her sister to help out.
At trial the parties stipulated as to jurisdiction, venue, the employer-employee relationship, the compensation rate, the date of accident and the date of maximum medical improvement. The Judge of Industrial Claims found that claimant was possessed of a 50% disability of her body as a whole and, due to her educational background, her injury, and her personality, she was found permanently and totally disabled. The Industrial Relations Commission affirmed the Judge of Industrial Claims in a 2-1 per curiam decision. It is from that decision that this petition is brought.
I agree with the dissenting opinion of Commissioner Friday for the following reasons.
It is recognized that an injured party may reject serious surgical operations, particularly where the party is aware of the nature of such an operation and is genuinely afraid to undergo it.[1] Nevertheless, as this Court stated in South Atlantic Shipbuilders, Inc. v. Taylor:[2]
"We must disagree with the findings of the Full Commission. The employer-carrier has the burden of showing that suitable employment is available for a claimant only after the claimant has proven by competent, substantial evidence that he is not able to acquire and uninterruptedly perform even light work in the open labor market. Port Everglades Terminal Co. v. Canty, 120 So.2d 596 (Fla. 1960). .. ."
The record in this case shows that Respondent cannot do the same work as she did before her second industrial accident, but it also reflects that she is not willing to be trained so that she might receive new skills or improve old ones which would enable her to do work of some sort.
I do not believe that the Legislature of Florida has ever intended that those seeking *309 workmen's compensation benefits can voluntarily withdraw themselves from the work force of this state and receive full compensation benefits for life without demonstrating a greater physical incapacity than is evidenced in this record. Respondent has shown certain anatomical disabilities which do not render her totally incapacitated; on the contrary, she has demonstrated that her present attitude concerning her own welfare and economic improvement is the major factor in her present failure to work. We share Commissioner Friday's concern regarding the need for a greater "awareness of the responsibilities attendant upon claimants themselves."
The record indicates a lawful basis to establish benefits equal to 50% of that ordered by the Judge of Industrial Claims, but there is insubstantial evidence to support an award of benefits of 100%. Claimant has clearly failed to exhaust available means of rehabilitation. It is not the intent of the Legislature in enacting the Workmen's Compensation Act to permit a person to gain benefits by resigning from society.
I must dissent.
NOTES
[1] Neither side has advanced any suggestion that any procedural right has been infringed in the course of these agency proceedings.
[2] The pertinent finding of fact are (R. 179-182):

6. The issue to be resolved at the hearing in this cause was the extent of the claimant's permanent disability based upon the claimant's loss of wage earning capacity. The claimant's position is that she has suffered a permanent and total disability as a result of the merger of her prior disability with that arising from the subject accident to produce a total loss of wage earning capacity. The carrier took the position that the claimant's loss of wage earning capacity was not more than 50 per cent functional or anatomical rating as given by the treating physician.
7. The claimant is a 28-year old female of the Negro race who is separated from her husband, and has two children. She was born in Cairo, Georgia; attended elementary and high school in Cairo, Georgia, where she lived with her parents and assisted her parents in working as a farm laborer, doing essentially harvesting work in the fields. She was graduated from high school in 1965 and migrated to Florida in December 1966, to join some of her relatives who were already living in West Palm Beach. In West Palm Beach, Florida, she obtained employment in approximately 1967 at the George Washington Hotel as a dishwasher. She worked there for several years as a dishwasher until she had an accident when she slipped and fell on a wet floor, which resulted in a disc injury and back surgery which was performed in March, 1970. This surgery produced a relatively good result and the claimant was able to return to her work as a dishwasher in approximately 1971, when she became employed by the employer herein. She continued in this employment until March 3, 1973, when she again fell on the kitchen floor and which caused the herniation of a disc in her low back. She has been treated conservatively for her back condition since the accident, and surgery has been recommended by her treating physician, Dr. Smith. The claimant steadfastly refuses to have additional surgery performed on her back, stating that she is genuinely afraid of the consequences of additional surgery, having heard of and being acquainted with other people who have had poor results from back surgery. Dr. Smith agrees that a second back operation is more likely to produce poorer results than first operative procedures to the low back. The type of surgery involved is major surgery, and I find that the claimant's refusal to undergo additional surgery is reasonable under all the circumstances and in view of her past experience.
8. The claimant currently suffers pain in her low back and this pain is aggravated by extended walking or sitting for periods of time. Standing for periods of time in excess of an hour or so aggravates her back condition. She has experienced this in nonemployment activity. Repetitive type lifting, stooping or bending would cause aggravation of her back condition and because of this she would be unable to lift trays of dishes, packages and/or boxes in connection with employment for which she has previously had experience. The claimant's entire work background involves employment that requires relatively heavy lifting, stooping or bending. Mr. John Spagnoli, a reading specialist and director of reading services for the Palm Beach County School system, performed a reading, writing and literacy test upon the claimant. Although the claimant states that she did in fact attend and graduate from the public high school in Cairo, Georgia, her present reading level is at the fourth grade level, with inadequate ability to express herself in writing. She is incapable of performing jobs which require verbal fluency at either receptive or expressive levels. The claimant is functioning below the level of functional literacy expected for any but the most simple requirements of our society. The claimant was evaluated by Mr. J.A. Morkoski, an employment expert, who had the benefit of the test results from the evaluation made by Mr. Spagnoli, and which are in evidence. He opined that the claimant was unemployable.
9. The claimant has made little or no effort to return to work since her injury involved herein. However, I find that this claimant's failure to seek employment is reasonable and justified by reason of the physical limitations placed upon her ability to work. She is not qualified to perform work which would be compatible with her physical limitations and disability. Based upon the testimony of Mr. Spagnoli, Mr. Morkoski and corroborated by my own observation of the claimant at the hearing, I find that it would be useless and futile for the claimant to seek employment because of her previous industrial background; her personality; her inability to function from a literacy standpoint, and her physical restrictions, disability and limitations on account of the industrial accidents above mentioned.
10. Because of her injury and disability in connection with the subject accident, which merged with the pre-existing disability, the claimant is no longer able to work in jobs involving repetitive lifting, stooping or bending, or work demanding physical labor. I, therefore, find that the claimant is unemployable in the open, competitive labor market, and is, therefore, from a wage earning standpoint, permanently and totally disabled.
[1] Henderson v. Booth, 281 So.2d 350 (Fla. 1973).
[2] 234 So.2d 97, 98 (Fla. 1970).