345 So.2d 648 (1977)
UNITED TELEPHONE COMPANY of Florida, Petitioner,
v.
William T. MAYO et al., Respondents.
No. 49618.
Supreme Court of Florida.
March 3, 1977.
Rehearing Denied May 31, 1977.
*650 David B. Erwin, of Woods, Johnston & Erwin, and W.W. Hill, Jr., Vice President, Rate Counsel, United Telecommunications, Kansas City, Mo., for petitioner.
Prentice P. Pruitt and Jerry M. Johns, Tallahassee, for respondents.
Woodie A. Liles, Public Counsel, and C. Earl Henderson, Associate Public Counsel, Tallahassee, for the Citizens of the State of Florida, intervenor-respondent.
SUNDBERG, Justice.
This proceeding is before us on petition for writ of certiorari to the Florida Public Service Commission. Petitioner seeks review of Order No. 7109 which was issued by the Commission on February 13, 1976. On May 12, 1976, the Commission issued Order No. 7238, which denied a petition for reconsideration. Because an understanding of previous events is critical to our ultimate disposition of this cause, an extensive factual summary is presented below.
Petitioner United is an independent telephone company regulated by the Public Service Commission. Since 1967 it has furnished service to nearly 90,000 additional subscribers in its service region of a thirteen-county area in southwest Florida. During that time, United has operated under the same rate schedules.
Petitioner requested general rate relief from respondent Commission in Docket No. 750316-TP. By its petition dated June 7, 1975, United sought to put into effect increased rates designed to produce some $8.1 million in additional annual gross revenues. The petition was accompanied by several hundred pages of data in support of the application for rate relief. In this data were several adjustments for known and imminent changes that would affect future revenues and expenses.[1] However, there was no reference to a wage and salary agreement which was due to take effect only one month after United filed its petition with the Commission (July 7, 1975). While the agreement was negotiated after the petition was filed, the agreement provided that wage and salary increases were retroactive to July 7, 1975. Petitioner made no mention of the wage and salary adjustment during four days of public hearings held before the full Commission in September, 1975. Petitioner first offered an exhibit mentioning the requested rate increase at a public hearing held in November. In addition to the public hearings held in September and November, supplementary hearings were held in December, 1975.[2]
During the pendency of the instant cause, Southern Bell also had a rate increase request pending. United intervened in the Bell docket in support of Bell's petition for a rate increase. Intervention was permitted because Bell's achieved intrastate rate of return determines the toll rate of return, and therefore determines the toll revenues which will accrue to an independent telephone company like United under separate settlement agreements between Bell and the various independents.
On February 2, 1976, the Commission met in agenda conference in Tallahassee and voted to adopt modified staff adjustments and to fix United's overall rate of return at 9.10%, with a resulting 11.28% return on equity. Eleven days later the Commission *651 issued Order No. 7109, which granted the petition of United in part and gave consent to the operation of rate schedules designed to generate $3,180,000 in additional gross annual revenues. United served its petition for reconsideration on February 23, 1976. On April 5, 1976, the Commission met in agenda conference in Tallahassee and voted unanimously to deny the petition for reconsideration, issuing Order No. 7238, dated May 12, 1976. Petitioner then filed in this Court its petition for certiorari review of the aforementioned orders of the Commission.
Petitioner asserts, inter alia, that: (i) the Commission deviated from the essential requirements of law in refusing to give effect to the July 7, 1975, wage and salary adjustment of United; (ii) the Commission deviated from the essential requirements of law in reducing United's revenue requirements for anticipated increases in toll settlement revenues as a result of the rate increase granted to Southern Bell; and (iii) the Commission acted unlawfully by fixing a rate of return for petitioner which was confiscatory, arbitrary, capricious, and not supported by competent, substantial evidence.
With respect to petitioner's first assertion, the Commission contends that United's wage and price adjustment of July 7, 1975, was proposed at such a late stage of the proceedings that it was properly ignored by the Commission in resolving petitioner's application for rate relief. When petitioner's application and supporting data were filed, information concerning the wage agreement was inexplicably omitted. Petitioner did not mention the requested rate increase until November, four months after the wage adjustment took effect. Petitioner offered only a single page, seven-line exhibit substantiating the increase. Even then, the exhibit was not offered until the witness who sponsored it, United's finance expert, was cross-examined.
Respondent's preparation for this cross-examination was understandably complex. Intelligent interrogation of petitioner's witness could only transpire after United's financial records were closely scrutinized. The Commission concedes that proper attention might have been devoted to the wage and price adjustment had it been given ample time to put its analytic machinery in motion. However, the Commission contends that several minutes before the finance witness is to be cross-examined is not the appropriate time to introduce financial data which have been in existence for more than four months and which ostensibly show a need for an additional $467,637 in rate relief. According to the Commission then, the exhibit has no probative value inasmuch as its auditors were precluded from performing their customary investigation of the validity of the proffered information.[3]
If this Court were required to determine at what specific chronological point in a proceeding the Commission could refuse to receive additional evidence, our task would be arduous indeed. But our review on certiorari is not broad enough to require this determination. Our duty is only to ascertain whether the Commission's findings are supported by competent and substantial evidence and whether the Commission acted in accordance with the essential requirements of law. See General Telephone Co. v. Carter, 115 So.2d 554 (Fla. 1959). In making these determinations, we initially note that United bears the burden of showing that the order with which it takes issue fails to comply with the essential requirements of law. Great Southern Trucking Co. v. Douglas, 147 Fla. 552, 3 So.2d 526 (1941); Atlantic Cost Line R.R. v. Railroad Commission, 5 So.2d 708 (Fla. 1942); Miami Bridge Co. v. Railroad Commission, *652 20 So.2d 356 (Fla. 1944); Pensacola Transit v. Douglass, 34 So.2d 555 (Fla. 1948).
In this case, both petitioner and the Commission present interests to which we are sensitive. From the petitioner's perspective, the wage and salary adjustment unquestionably created additional intrastate expenses which increased its revenue requirements. On the other hand, the Commission was already engrossed in analyzing voluminous and complex data when petitioner sought to admit evidence of the wage and salary adjustments. The addition of a significant variable at that time necessarily would have disrupted the Commission's intricate calculations.
Although we respect the validity of both parties' positions on this issue, we find that petitioner has failed to carry its burden. We find no justification for petitioner's failure to introduce the wage adjustment at a timely stage of the proceedings. Nowhere does United attempt to refute respondents' contention that the delay prevented the Commission from performing its usual audit of the figures contained therein. Nor does United refute the respondents' contention that the Commission was validly exercising its discretion in according the exhibit the treatment it did. Having failed to show that the treatment accorded its wage and salary adjustment deviates from the essential requirements of law, the petitioner cannot prevail as to its first point.
While we must find for the Commission in the case sub judice because petitioner failed to carry its burden of proof, we nevertheless express a certain uneasiness with the fact that no time limits are specified in the Commission's rules of procedure for admission of evidence. The Commission conceded that the introduction of new material after a hearing has begun is not unequivocally prohibited by its rules. See Order No. 7238. However, none of the Commission's procedural rules specifically address this issue.[4] The petitioner is entitled to rely on certain guidelines regarding the admissibility of this sort of evidence. We urge the Public Service Commission to adopt specific and intelligible rules governing this area, for in an appropriate case we will not hesitate to rule in a fashion necessary to protect an applicant from arbitrary or capricious procedure invoked by the Commission.
United next contends that the Commission deviated from the essential requirements of law in reducing United's revenue requirements by $993,000 for anticipated increases in toll settlement revenues. In Order No. 7109, the Commission reduced United's gross revenue
by $993,000 which represents the additional revenues derived from Southern Bell Telephone & Telegraph Co. through the settlement process by virtue of granting that company rate relief in Docket No. 74805-TP(CR) Order No. 7018, dated December 4, 1975.
Specifically, petitioner alleges that the Commission's action was unlawful because it arrived at this figure by taking judicial notice of evidence that was not a stated part of the Commission's decision in the Southern Bell case. The $993,000 figure was derived from evidence presented during the Southern Bell hearings.[5]
*653 United points out that the Commission's actions were in disregard of its own Fla. Admin. Code Rule 25-2.111, which provides that the Commission may take judicial notice of its own decisions but not of the evidence upon which those decisions are based.
It is true that this action of the Commission was irregular. However, this Court will not overturn the Commission's order merely because it failed to comply with its own evidentiary rule. In American Farm Lines v. Black Ball Freight, 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970), the United States Supreme Court articulated the general rule that:
"[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." NLRB v. Monsanto Chemical Co., 205 F.2d 763, 764.
United has not shown that it has been substantially prejudiced by the Commission's failure to observe its own evidentiary rules. United was an intervenor in the Southern Bell Telephone docket and therefore had the opportunity to shape the record. Furthermore, the Commission's own rules show that it does not intend to be bound strictly by procedural rules. To illustrate, Fla. Admin. Code Rule 25-113 states that "exclusionary rules of evidence shall not be used to prevent the receipt of evidence having substantial probative effect."
Because petitioner was a participating intervenor in the docket where the evidence relied upon was developed, we cannot say that it was substantially prejudiced by the Commission's action. Absent such a showing, this Court cannot overturn the decision of an administrative agency.
Finally, petitioner argues that the Commission acted unlawfully because it fixed a rate of return which was so deficient as to amount to confiscation. The definition of "confiscation" was articulated by the United States Supreme Court in Board of Public Utility Commissioners v. New York Telephone Co., 271 U.S. 23, 31, 46 S.Ct. 363, 366, 70 L.Ed. 808 (1926):
The just compensation safeguarded to the utility by the Fourteenth Amendment is a reasonable return on the value of the property used at the time that it is being used for the public service. And rates not sufficient to yield that return are confiscatory. Willcox v. Consolidated Gas Co., 212 U.S. 19, 41, 29 S.Ct. 192, 53 L.Ed. 382; Bluefield Co. v. Public Service Commission, 262 U.S. 679, 692, 43 S.Ct. 675, 67 L.Ed. 1176.
The rate of return which public utility companies may be allowed to earn is a question of vital importance to both rate payers and investors. An inadequate return may prevent satisfactory services to the public and concomitantly disappoint investors who will look for alternative sources of investment. The Public Service Commission is given the power to fix the return within certain limits. That return cannot be set so low as to confiscate the property of the utility, nor can it be made so high as to provide greater than a reasonable rate of return, thereby prejudicing the consumer. As Mr. Justice Miller wrote in Chicago, Minneapolis & St. Paul R.R. v. Minnesota, 134 U.S. 418, 459, 10 S.Ct. 462, 33 L.Ed. 970 (1890) (concurring opinion):
Neither the legislature nor such commission acting under the authority of the legislature, can establish arbitrarily and without regard to justice and right a tariff of rates for such transportation, which is so unreasonable as to practically destroy the value of property of persons engaged in the carrying business on the one hand, nor so exorbitant and extravagant as to be in utter disregard of the *654 rights of the public for the use of such transportation on the other.
While the Commission has the difficult responsibility of determining a "reasonable" rate of return for the utility, this Court's examination in reviewing the Commission's order is not nearly so onerous. The law is well established in this State that the matter of rate regulation is essentially one of legislative control. The fixing of rates is not a judicial function; hence our right to review the conclusion of the legislature or of an administrative body acting upon authority delegated by the legislature is limited. Unless confiscation is clearly established by competent substantial evidence in the record, this Court will not interfere with the exercise of rate-making. Shevin v. Yarborough, 274 So.2d 505 (Fla. 1973); Gulf Oil Co. v. Bevis, 322 So.2d 30 (Fla. 1975); American Sightseeing Tours, Inc. v. Bevis, 326 So.2d 437 (Fla. 1976); Florida Retail Federation, Inc. v. Mayo, 331 So.2d 308 (Fla. 1976). Accordingly, we must examine the record to determine whether competent substantial evidence which supports the Commission's findings and conclusions exists. Because we find no palpable evidence of confiscation in the record, we refuse to meddle with the judgment of the Commission.
Petitioner argues in its brief that it is entitled to "equality of regulatory treatment" as required by Bluefield Co. v. Public Service Commission, supra, and Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944). It then attempts to illustrate that the rate of return on common equity fixed by the Commission denied it this equality by comparing United's rate of return with those of other utilities. Respondent rejects petitioner's contention that equality of regulatory treatment is synonymous with identity of treatment. A given return on common equity which has been properly determined for one company in no way mandates a similar allowance for a completely different company. Thus, United's transparent attempt to prove its own case by reference to the conditions and requirements of other telephone companies is of no benefit in resolving the issue of whether the rate of return allowed petitioner is based on competent substantial evidence. In addition, respondents argue that United should not even be permitted to compare its rate of return with other utilities because that position was never part of its case. In Order No. 7238, the Commission stated:
The evidence in this record cannot support such a finding inasmuch as United sought a return on common equity which was from .5 to 2.36% higher than the levels granted to the independent companies and Southern Bell. Such proof as it offered was intended to show a need for a 14.5% return on common equity. United may be indicating in its petition for reconsideration that as an alternative to the 11.28% allowed return on common equity it was granted in Order No. 7109, in retrospect, it would prefer to receive the rate allowed to other independent telephone companies; however, that position was never part of its case, and hence cannot be considered by the Commission.
In determining a reasonable rate of return on common equity, the Commission had the benefit of comparing the testimony of expert witnesses presented by the company and by Public Counsel. Each witness represented conflicting interests in the case. Petitioner's expert asserted a return of 14.5% on common equity. Public Counsel's expert recommended a return on common equity of 11.0% to 11.5%. After a review of the record, the Commission agreed substantially with the conclusion of the citizens' expert, although it rejected some of his premises.
It is our view that the petitioner has not met its burden of showing that the Commission's order is not supported by competent, substantial evidence. There was a divergence of expert opinion as to the proper rate of return to be granted United. It is the Commission's prerogative to evaluate the testimony of competing experts and accord whatever weight to the conflicting opinions it deems appropriate. Shevin v. Yarborough, supra. Similarly, we find no *655 deviation from the essential requirements of law in the Commission's refusal to honor the "comparable earnings" approach enunciated by petitioner. Without expressing an opinion on the propriety of petitioner's argument, we cannot say that the Commission acted unlawfully because it refused petitioner the opportunity to alter its theory of the case after petitioner's initial hypothesis was unsuccessful. Judicial and administrative economy will not permit the amendment of a declaration in such a manner as to allege entirely new items on which recovery is claimed after all the evidence has been introduced.[6]
We cannot agree with the petitioner that the action of the Commission in regard to the three issues discussed or any of the other points raised represents a deviation from the essential requirements of law such as would justify reversing the Commission's order. Accordingly, the petition for writ of certiorari is denied.
It is so ordered.
ADKINS, BOYD, HATCHETT and KARL, JJ., concur.
NOTES
[1] In regulating rate making, it is customary to select a test year or period for purposes of examining the revenue requirements of the company under consideration. The test period is chosen so that it will reflect typical conditions in the immediate future. The propriety or impropriety of a test year depends upon how well it accomplishes the objective of determining a fair rate of return in the future. Thus, the most recent available data are employed, but these figures are adjusted for known and imminent changes which will prevail in the immediate future when the rates become effective. See Gulf Power Co. v. Bevis, 289 So.2d 401 (Fla. 1974).
[2] The Commission authorized intervention in the docket by Public Counsel and by Telephone Answering Service of Fla., Inc.
[3] Pursuant to § 364.05(4), Fla. Stat. (1975), commonly referred to as the "file and suspend" law, the Commission may withhold consent to the operation of a new rate schedule until completion of the hearing and final decision in the proceeding, but such consent shall not be withheld for a period longer than eight months from the date of filing the new schedules, after which the rates may go into effect under bond. We note then that the Commission is under some pressure to expedite its final determinations.
[4] Certain rules indirectly reflect on the issue of admitting evidence after the proceeding has begun. See, e.g., Fla. Admin. Code Rule 25-2.99:

Postponements. For cause shown, postponements, continuances and extensions of time will be granted or denied at the discretion of the commission or the hearing examiner. Except in cases of extreme emergency, requests for postponements must be made at least five (5) days prior to the date noticed for the hearing.
[5] In Order No. 7238, the Commission said:

Since the figures supplied by United are incorrect, similar calculations are also required in this docket. Utilization of this calculation requires reference to evidence in the Bell case beyond the facts cited in Order No. 7018. Normally, official notice of facts not found in the Order will not be taken. Where, as here, however, the Company's figures cannot be relied upon, the Commission must use such other evidence as is reliable. We refer to the evidence in Docket No. 74805-TP. United was a full party to this proceeding for the purpose of supporting Bell's request for additional revenues and the present method of division of intrastate toll revenues.
As a party, it is familiar with the evidence and testimony presented by Bell. Further, as an intervenor, it was entitled to present evidence and testimony of its own.
[6] In amending pleadings, for example, amendments are usually granted liberally. However, the right to amend does not authorize plaintiff to state new and different causes of action. Mansfield v. Brigham, 91 Fla. 109, 107 So. 336 (1926); Gables Racing Ass'n. v. Persky, 131 Fla. 842, 180 So. 24 (1938); Federal Land Bank of Columbia v. Brooks, 139 Fla. 506, 190 So. 737 (1939). This pragmatic rule is mandated or suit could last in perpetuity.