ENGLAND, Chief Justice.
Pursuant to article V, section 3(b)(3) of the Florida Constitution and section 440.- *671 27(1), Florida Statutes (1977), we are called upon to review an order of the Industrial Relations Commission affirming the determination of the judge of industrial claims that the death and final hospitalization of Izoria Woodson was causally related to a compensable, work-related leg injury, and ordering payment of medical and funeral expenses by Woodson’s former employer.
On February 11,1972, while working as a restaurant cook, Woodson was struck on the leg by a heavy oven door. Subsequently, she developed thrombophlebitis at the site of the injury and was hospitalized. Immediately after her discharge she was again hospitalized, complaining of severe chest pains. Woodson returned to work in December 1972, working fewer hours and performing lighter duties, but was forced to resign during the spring of 1973 due to recurring chest pain.
Shortly after her leg injury and hospitalizations, Woodson came under the care of a cardiologist who, though believing that her original chest pain may have been caused by emboli dislodged from her injury site, treated her for high blood pressure and chest pain — not for pulmonary emboli. Woodson remained under the care of the cardiologist until her death on June 3,1976, after a two-month period of hospitalization.
Woodson’s former employer and his workmen’s compensation insurer argue that the Commission departed from the essential requirements of law by affirming a JIC determination that there existed a causal relationship between Woodson’s, injury and death. This decision, they urge, is not supported by competent substantial evidence. See Chicken ’N Things v. Murray, 329 So.2d 302 (Fla.1976); Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla.1974). We agree.
Industrial Claims Judge Wagner, who first held a hearing on Woodson’s disability in February 1973, entered an order in January 1974 finding Woodson to be totally and permanently disabled as -a result of her industrial accident. That order was reversed by the Commission in July 1974, on the ground that there was no competent substantial evidence to support the causal connection between the industrial injury and Woodson’s disabling coronary condition. The evidence of causation on which Judge Wagner had erroneously relied all came from Woodson’s treating physician, Dr. Prince. In its order, the Commission identified the following colloquy in a 1972 deposition given by Dr. Prince, relative to causation, as “the closest that the doctor came to giving an opinion based on reasonable medical probability”:
Q. Doctor, is it possible for a person to have say a condition, arteriosclerotic condition which might or might not lead to a myocardial infarction and angina? Could that condition be precipitated into activity by a pulmonary emboli?
A. Yes. .
Q. Do you think that might have happened in this case?
A. I think it very well could have happened.
Q. Do you think it probable that it happened?
A. I think it is possible that it happened.
Industrial Claims Judge Wieland conducted another hearing in February 1976, following this Court’s denial of certiorari to review the Commission’s order of reversal. In his June 1976 order, Judge Wieland identified as the only new evidence on the issue of causation depositional testimony of Dr. Prince taken in January 1976. He also specifically identified, as the basis of his finding on causal connection, this statement from that deposition.
Since that time, she has developed angina pectoris, and I think her angina pectoris was probably precipitated by the episode [of phlebitis] that she had at the time.
After learning that Woodson had died, the employer and carrier filed a petition to modify the June order, and Judge Wieland held a third hearing. The principal matter considered at that hearing — the one now before us — was the causal connection between Woodson’s 1972 injury and her death. Based on medical records and a November 1976 deposition of Dr. Prince, Judge Wie- *672 land found that the requisite connection existed. The Commission affirmed this finding without discussion.
Our review of the medical records and Dr. Prince’s last deposition reveals no more competent substantial evidence to support a causal connection between Woodson’s injury and her death than was produced in support of the original 1974 JIC order. While testifying as to the cause of Wood-son’s death, Dr. Prince stated:
My opinion is the angina pectoris was I thought, brought on, probably brought on by the phlebitis and pulmonary emboli as a manifestation of intrinsic heart disease. Then, as she had the angina over a period of years, and then the angina was still a manifestation of the intrinsic heart disease, and in the end, the intrinsic heart disease killed her.

. The original thing that brought about her manifestations of this was the emboli [dislodged from her phlebitis]. For instance, when we have a person that has angina pectoris and which is under control, as someone begins to throw a pulmonary emboli, they may begin to have angina pectoris so bad that they don’t know what to do. Let’s say that they begin to throw emboli, and they never had angina pectoris before, and then the angina pectoris may be brought out, and it may be the probable cause of the intrinsic heart disease. At that point, if you have a coronary thrombosis or do some damage, then you damage the heart where it may not have happened if you did not have the pulmonary emboli for five years.
Asked whether he could give an opinion, based on reasonable medical probability, regarding the extent to which the leg injury accelerated Woodson’s death, Prince stated:
That is impossible. I can’t give you that. Like I say, if she hadn’t had the leg injury this may have been — this may have gone on for five years. I don't know. I have no way of telling.
[Q. Actually, it has been about five years since the injury?]
Sure has.
Throughout these protracted proceedings, Dr. Prince’s testimony connecting Wood-son’s leg injury to her fatal heart disease has been speculative at best. The Commission found his medical opinion legally insufficient in July 1974, and it has remained unchanged since that date. The doctor's reiteration of his first analysis provides no legal basis for a determination that Wood-son’s leg injury was causally related to her death.
The Commission departed from the essential requirements of law in upholding the findings of the JIC and ordering payment of the cardiologist’s entire bill[1] and the final hospital and funeral expenses.[2] This cause is remanded to the Industrial Relations Commission for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, SUNDBERG and ALDERMAN, JJ., concur.
ADKINS, BOYD and HATCHETT, JJ., dissent.

. The employer and carrier have not here challenged the legal basis for an award for disability benefits.

. Due to the disposition of this case, other points raised by petitioners need not be addressed. .