THOMAS, Justice.
In this proceeding the injured workman is seeking a review of the order of the *321 Florida Industrial Commission affirming the final of four orders of the deputy commissioner.
Before approaching an examination of the merits of the case, it should be noted that between the dates of the second and fourth orders of the deputy commissioner he entered one which was in no sense a modification of the two predecessors but simply dealt with a claim for nursing services. This is important to remember when we consider the contention of the respondents relative to the nature of the second and fourth orders modifying the first.
We are immediately concerned, in treating of the claimant’s petition for certiorari and ultimate reversal of the final order of the Full Commission affirming the deputy’s order, with the other three orders of the deputy entered S July 1957, 2 March 1959, and 27 June 1961.
In the first order the claimant was awarded benefits for 30% permanent partial disability of the body as a whole. A subsequent petition by the claimant culminated in the second order increasing the award of permanent partial disability, based upon wage-earning capacity to 40% of the body as a whole. Then in the fourth, and last, order disregarding the third order for the reason we have given, the loss of wage-earning capacity of the claimant was increased to 70%. This last order was affirmed by the Full Commission with the simple statements that the findings of the deputy were supported by competent substantial evidence according with logic and reason and that the essential requirements of law had been followed.
The extent of disability of the claimant seems to have been well established. He was injured in 1955. Following the entry of the second order he underwent a partial laminectomy, 10 June 1959, to remove protruding discs. He must wear a corset and walk with a cane to maintain his equilibrium. A brace is worn on his right leg because the foot cannot be controlled and he is required to wear shoes of a special type. He has reached the age of 61 and cannot read or write. Because of the mental and physical handicaps he has not been able to obtain employment.
It was testified by a physician, who at times during the protracted litigation appeared as a witness for the claimant and at other times for the respondents, that the claimant could not do the usual type of work for which he would be fitted, but for his injuries, since he could bend, stoop, squat, lift, walk, stand and sit only to a limited degree and was so conditioned that at times it would be necessary to rest in bed. The doctor “imagined” there was some sort of light work the claimant could do but even that would require frequent rest periods.
We hasten to say that this physician was recognized by all parties as a duly qualified expert in the field of orthopedic surgery.
There is no contention that the claimant is not severely disabled; the dispute is whether or not he should be declared totally disabled in the absence of a showing by the employer that there is work available which, in his handicapped state, he could perform.
The petitioner cites from Larson’s Workmen’s Compensation Law, § 57.51, the following appropriate statement: “ ‘An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability or quantity, that a reasonably stable labor market for them does not exist, may well be classified as totally disabled.’ ” The quoted sentence was taken from Lee v. Minneapolis Street Railway Co., 230 Minn. 315, 41 N.W.2d 433.
This very language was quoted and approved in an opinion-of this court to which was added the significant, apposite, statement that a laborer need not be incapacitated for all purposes, except to exist, in order to be held totally and permanently disabled. The court cited with approval the opinion of the Supreme Court of Colorado *322 that sporadic employment on rare occasions at reduced remuneration in circumstances such as services secured through influence, charity, gratuity or a sense of responsibility would not belie the status of an employee as “ 'totally disabled for all practical purposes [in] competing for remunerative employment in any general field of human endeavor.’” Port Everglades Terminal Co. et al. v. Canty et al., Fla., 120 So.2d 596.
The principles discussed and embraced by this court seem to be fitting criteria by which to judge the merits of claimant’s contention that for all practical purposes he is completely incapacitated, unless it be established by the respondents that work is available that he can do within the limits of his ability. Such is the question he poses, namely, did the burden of showing the existence of services he could perform fall upon the respondents once his handicap was established? In other words, should he have been held totally disabled in the absence of such proof?
In his final order the deputy found that the claimant was not permanently and totally disabled and not entirely excluded from the labor market. In support of the conclusion he referred to the testimony of the doctor that the claimant could work “as a watchman, an elevator operator, etc., provided he [had] reasonable opportunity to rest; that claimant would be physically able if he exerted himself in some form of employment within his physical capacity.” (Italics supplied.) The deputy thought he could earn $20 to $25 a week in the open labor market, but it is not shown upon what he based that estimate. The observations of the deputy as well as those of the physician appear too uncertain, indistinct, speculative and conjectural to form bases for the ultimate ruling.
Because of the reliance by the deputy on the testimony of the physician to whom we have referred, we have scrutinized his testimony.
The doctor detailed claimant’s many deficiencies such as a “slapping type of gait,” difficulty in tying his shoes, lack of “pullup” in his right foot, which subjects him to the danger of slipping or falling, presence of pain, and a permanent “dropped foot” making it hard to extend the foot and ankle “that is, [bring] the foot and ankle up.”
The doctor thought that the claimant was not able to do heavy work, could not “do the usual type of work that they [laborers] have to do.” He thought that the claimant could “do certain types, like a watchman or something along that line,” but “it would be very limited.” But the doctor stated also that the claimant would have difficulty, “walking, standing and lifting.” Any work the claimant undertook would have to be light with rest periods. Repeating, the doctor was positive the claimant could not return to “a laboring type of work” and testified “I imagine there would be some type jobs that he could do in the line of watchman and elevator operator and things like that.” (Italics supplied.)
We do not interpret the procedure in this case to be solely a re-litigation of the entire controversy as respondents suggest and as we have held may not be done under the guise of seeking a modification under F.S. Sec. 440.28, Workmen’s Compensation Law, F.S.A., on the ground that a mistake in determination of fact had been made or a change in condition had occurred. There was reason to modify the second order on the ground that claimant’s condition had worsened. After the second order he submitted to an operation and we have the testimony of the doctor who performed it, and who appeared as a witness for both parties, that the claimant’s condition deteriorated after the operation. When asked if the claimant’s condition became worse following surgical treatment, he answered un-qualifiedly “Yes.” Upon further questioning he stated that the claimant had no “foot drop” prior to the operation and that his ailment was a “new thing.” Not only that but the doctor stated that claimant’s condition was growing worse even before the surgery.
*323 It is important to note that the same doctor said the claimant would have more difficulty in prolonged standing and walking, and that he would not recommend that the claimant climb ladders although he could climb stairs, if careful.
 Having concluded that there was a change in the condition of the claimant justifying the entry of the final order of the deputy commissioner which was approved by the Full Commission and is now befoie this court, we take the view that the entire history of the claim may properly be appraised to determine whether or not the decision that the claimant was not totally disabled was supported by competent substantial evidence in accord with logic and reason. Without projecting our views about the testimony of individual witnesses we think that the answer to the question must be negative. We close this phase of the case by referring to the statement in respondents’ brief that although they believed the deputy commissioner should not by the last order have modified the second one, they were reconciled to the action and had not sought appellate relief. This, therefore, leaves for our consideration and determination the lone question whether the claimant was or was not entitled to an order holding him totally, permanently disabled.
We cannot conceive of the claimant with his many infirmities and with so many restrictions to his movements being equipped to perform the duties of any job suggested. We say suggested because none of them is shown to be available and all of them were mere guesses.
We are impelled to quash the order of the Full Commission, and we do so with directions to remand the cause to the deputy so that the respondents may have the opportunity to show what positions are available to one in petitioner’s situation. This is the request the petitioner has made and we think it is a just one.
We believe also that the procedure was approved by this court in Port Everglades Terminal Co. v. Canty, supra, when the opinion of the Supreme Court of Pennsylvania in Earley v. Philadelphia & Reading Coal & Iron Co., 144 Pa.Super. 301, 19 A.2d 615, was said to state well the distinction between permanent partial and total disability. The Pennsylvania court held that as regards persons so injured as not to be able uninterruptedly to do even light work, it was incumbent upon the defendant to show that suitable work was available “otherwise a claimant [was] entitled to total disability.” If the respondents fail to meet the burden, the deputy commissioner should hold that the petitioner is totally permanently disabled.
The order of the Full Commission is quashed with directions that the deputy be required to proceed in accord with the views we have expressed.
ROBERTS, C. J., and TERRELL, THORNAL and O’CONNELL, JJ., concur.