411 So.2d 919 (1982)
Charles FLESCHE, Appellant,
v.
INTERSTATE WAREHOUSE and U.S. Fidelity & Guaranty Company, Appellees.
No. AD-327.
District Court of Appeal of Florida, First District.
March 15, 1982.
Rehearing Denied April 16, 1982.
*920 Richard A. Barnett, Hollywood, for appellant.
Anthony J. Beisler, III, Fort Lauderdale, for appellees.
LARRY G. SMITH, Judge.
Claimant appeals a worker's compensation order denying his petition for modification based on a change in his wage earning capacity.
The deputy commissioner had previously denied a claim for wage earning capacity *921 loss because of the inadequacy of claimant's work search evidence. After receiving additional evidence of claimant's unsuccessful work search at the modification hearing, the deputy denied the modification, ruling that the evidence of claimant's unsuccessful job search, which he conducted subsequent to the original hearing, should have been presented by the claimant at the original hearing, and the issue was therefore res judicata. Further, the deputy ruled, the claimant's work search subsequent to the original order was not a proper predicate for a change of condition as contemplated by the modification statute, Section 440.28, Florida Statutes. We must respectfully disagree with these rulings by the deputy commissioner, who was compelled to render his decision on questions some of which, apparently, have not heretofore been clearly addressed by an appellate tribunal in Florida workers' compensation litigation. We therefore reverse.
The facts, briefly, show that the 57-year old claimant was injured in 1975 while employed as manager for a warehouse storage rental complex, suffering injuries to his back for which he underwent surgery. He received temporary total disability benefits until October 3, 1979, at which time permanent partial benefits were commenced based upon a 35% body as a whole disability rating, voluntarily accepted by the employer/carrier. He then filed a claim seeking permanent total disability, or in the alternative, a disability rating based on wage earning capacity loss in excess of the 35% anatomical rating. These claims were denied after a hearing on January 30, 1980.[1] Claimant conducted a work search from March 19, 1980 to May 8, 1980, contacting some twenty-four prospective employers without success.[2] He then filed his petition for modification, and presented his work search evidence at a hearing on April 27, 1981. Following this hearing, the order appealed was entered.
There can be little doubt that a modification based upon a change in earning capacity is contemplated by the statutes. Section 440.28, Florida Statutes. This was made clear by the Florida Industrial Commission in DuPont Plaza Hotel v. Schiffman, IRC Order 2-2326 (1973), cert. denied, 291 So.2d 5 (Fla. 1974), overruling the Commission's decision in Gomez v. Panelfab Products, Inc., 6 FCR 409 (1971), which had declared that a change in condition pursuant to Section 440.28 "refers only to physical condition and that wage earning capacity loss cannot be construed alone as grounds for modification." Larson's Workmen's Compensation Law, Volume III, § 81.31 (quoted in Dupont Plaza, supra), points out that "disability," has a medical as well as an economic component, and that "a change in claimant's ability to get or hold employment, or to maintain his earlier earnings level, should be considered a `change in condition' even though claimant's physical condition may have remained unchanged." Cases from other jurisdictions have held that a modification based on a change in earning capacity may be ordered without any showing of a change in physical condition. Hunt v. Industrial Commission, 107 Ariz. 569, 490 P.2d 575 (1971); Levesque v. Shorey, 286 A.2d 606 (Me., 1972); Miller v. Argonaut Insurance *922 Company, 136 Ga. App. 101, 220 S.E.2d 89 (1975). The distinction between medical or physical disability and wage earning capacity has been recognized in Florida, Maldonado v. Keller Metal Products, 185 So.2d 702 (Fla. 1966), and as Commissioner Slepin so appropriately pointed out in Dupont Plaza, supra, it is not "disability" that is compensable, but the resulting loss of earning capacity.
The more critical aspect of this issue is whether a change in earning capacity may be predicated upon work search evidence accumulated subsequent to an initial denial of wage earning capacity loss, where the initial denial was based on an inadequate work search, or no work search. We answer the question in the affirmative. The ultimate issue is one of employability, and the so-called "work search" test is merely the evidentiary vehicle by which employability, or lack of it, is proven.[3] If the claimant's evidence fails to meet the job search requirements so as to "preclude" consideration[4] of a disability award based upon loss of wage earning capacity in excess of his anatomical disability,[5] then the assumption must be made that no such impediment to employment is present at that time.[6] If the evidence shows that the claimant is in fact unemployed, then the deputy may validly assume, absent evidence to the contrary, that this status will be remedied in the near future. However, we find no basis in logic or reason to prevent a claimant from proving, within the two year period allowed by this statute, Section 440.28, that although at the initial hearing he was justifiably presumed to have no claim based on loss of earning capacity, at a later time his earning capacity was nonexistent or impaired to a degree which would warrant an increase in his disability payments. We further reject, as contrary to the spirit and purpose of the worker's compensation law, the suggestion implicit in the employer/carrier's arguments here that even if claimant was in reality unable to secure employment within his capabilities at the time of the first hearing, he should be precluded from proving that he is unable to do so at the time of his modification hearing, because such proof does not establish a "change in condition." We find the language of Mr. Justice Ervin in Arnold v. Stroud, 221 So.2d 729 (Fla. 1969), particularly appropriate in disposing of this point (Id. at 731):
... [T]he evidence presented in support of modification indicates the transpiration of events cogently indicative of the incapability of the prior determination with the real extent of Petitioner's disabilities. In these circumstances, to hold that Petitioner is not entitled to modification of the earlier determination so as to conform his compensation award to the existing realities of his disability would unduly thwart the liberal purposes sought to be accomplished by F.S. Section 440.28, F.S.A. (emphasis supplied).
We also dismiss any suggestion that a modification based on new job search evidence must be rejected under the rule *923 prohibiting the use of "cumulative evidence" for such purposes. Sauder v. Coast Cities Coaches, Inc., 156 So.2d 162 (Fla. 1963), the case cited by the deputy commissioner in support of his res judicata ruling, does state that it is the responsibility of the claimant to present his evidence to support his claim and, "as in any other proceeding, he is bound by it." The opinion also recites that "all known evidence" bearing on the claim should be submitted to the deputy, and that if the claimant "fails to produce evidence available to him or produces unreliable evidence," he cannot thereafter claim that the deputy committed error in relying upon it.[7] Id. at 165. A careful reading of the Sauder opinion, however, reveals that these comments of the court were directed to modification attempts based upon mistake of fact, not change in condition.
The Sauder opinion also contains the observation, in reference to modifications under Section 440.28 based upon mistake in a determination of a fact or change in condition (156 So.2d at 165):
As we said on several occasions, it is not sufficient to support a modification under either provision by merely producing cumulative evidence.
This statement, read in isolation, can be interpreted erroneously, as later indicated by the court in Soloff v. U-Totem, Inc. of Broward, 257 So.2d 31 (Fla. 1971), in which the court reaffirmed Dixon v. Bruce Construction Corporation, 160 So.2d 116 (Fla. 1963), for the proposition that the so-called "cumulative evidence" rule, while applicable to petitions for modification on mistake of fact, cannot be applied equally and indiscriminately where the petition is based upon a change in condition.
Thus, the deputy commissioner's and the E/C's reliance on the Sauder case appears to have been inappropriate. Furthermore, the E/C's reliance here upon Sonny Boy's Fruit Company v. Compton, 46 So.2d 17 (Fla. 1950), is inapposite, for the same reasons given by the Dixon court for disregarding it in that case, namely, that the attempted modification in Sonny Boy's was based on alleged mistake of fact. Sonny Boy's upheld the Industrial Commission's reversal of a modification based on cumulative evidence showing merely a difference of opinion from that of the witnesses who testified at the first hearing, the court stating (46 So.2d at 18): "It developed nothing new nor did it show that something material had been overlooked by which the rights of the claimant were prejudiced." We interject here that an adequate work search conducted subsequent to an inadequate one, or none at all, can hardly be characterized as "nothing new;" and, while the evidence of a new job search could not have been earlier "overlooked," in the sense that something that has not yet occurred cannot be overlooked, such evidence is highly material, and we can think of few circumstances more devastating or prejudicial to the rights of a claimant than to have consideration of his loss of earning capacity claim at an earlier hearing "precluded" by a finding that his job search evidence was considered inadequate.
We have thus far here determined that a change in wage earning capacity, or economic condition, may be the subject of a modification based on change in condition, and that evidence to support such a change consisting solely of new job search evidence is not prohibited under the cumulative evidence rule. Nevertheless, we must yet deal with the E/C's not unpredictable assertions that the deputy commissioner properly denied the attempt at modification because claimant's job search should have been conducted "prior to the trial on the merits and not after," and that the claimant should not be entitled to a reconsideration of his claim when he simply failed to prove his entitlement *924 to benefits "when his day in court arrived." In other words, is the "second attempt" to prove loss of wage earning capacity in excess of anatomical disability barred by the doctrine of res judicata? We think not.
The doctrine of res judicata, which is equally applicable to the decisions of administrative tribunals and courts,[8] is said to be an obvious rule of expediency, justice, and public tranquility, and further: "Public policy and the interests of litigants alike require that there be an end to litigation, which, without the doctrine, would be endless." 32 Fla.Jur.2d, Judgments and Decrees, § 100. It is equally clear, however, that there are recognized exceptions in the application of the doctrine, one of which is that it will not be invoked where it will work an injustice.[9] This exception appears well-rooted in the law of Florida, as articulated by Mr. Justice Terrell in Wallace v. Luxmoore, 156 Fla. 725, 24 So.2d 302, 304 (1946):
Stare decisis and res adjudicata are perfectly sound doctrines, approved by this court, but they are governed by well-settled principles and when factual situations arise that to apply them would defeat justice we will apply a different rule. Social and economic complexes [sic] must compel the extension of legal formulas and the approval of new precedents when shown to be necessary to administer justice.
Further, in Universal Const. Co. v. City of Fort Lauderdale, 68 So.2d 366, 369 (Fla. 1953), the court expressed the view that:
[W]hen a choice must be made we apprehend that the State, as well as the courts, is more interested in the fair and proper administration of justice than in rigidly applying a fiction of the law designed to terminate litigation.
* * * * * *
... Indeed, this very court, among others, has announced the salutary principle that the doctrine of res judicata should not be so rigidly applied as to defeat the ends of justice.
We conclude that to apply the doctrine of res judicata under the circumstance presented here would result in injustice. Our holding does not affect the application of the doctrine in other contexts, as in Florida Division of Corrections v. Morgan, 397 So.2d 1026 (Fla. 1981), and cases therein cited, and City of West Palm Beach v. Chisolm, 405 So.2d 279 (Fla.App. 1981).
We are convinced that a "sink-or-swim" approach to the job search requirement has not and will not serve the interests of the employer/carrier, the claimant, nor the fair and equitable administration of the worker's compensation law. It has encouraged, even compelled, a species of job-seeking, for evidentiary purposes, that probably bears little resemblance to job-seeking generally. Consider the dubious decisions a claimant must make, for example, on whether to appear for a job interview using a crutch or cane, or wearing a cervical collar or a brace, or whether to disguise or obviously display a limp, pain, or restriction in bodily movements. The more truthful and candid the measurably impaired job applicant might be, the less likelihood of success in obtaining employment. On the other hand, a claimant who bears no visible or obvious signs of disability may yet be severely limited or restricted in his working ability, so that there might be many job opportunities open to him, but none that he could safely undertake, or competently perform, if hired. Not the least of the claimant's difficulties is that concealment of past injuries or present disabilities might increase the chances of being hired, but  besides being basically dishonest  this might also operate to deprive him of needed medical or other benefits in event of a re-injury or aggravation of an existing condition. Martin Co. v. Carpenter, 138 So.2d 400 (Fla. 1961).
Additionally, it has been our observation that the claimant is often required to conduct *925 a job search in an atmosphere of uncertainty as to just what, in the way of physical activity, may ultimately be expected of him. This was recently illustrated by the plight of the claimant in Dan's Plumbing and CNA Insurance v. Smith, 410 So.2d 941 (Fla. 1st DCA 1982), in which the claimant relied upon a treating physician, who advised him not to return to work, only to be confronted later by a ruling of the deputy commissioner, accepting the opinion of an examining physician to whom claimant had been referred by the carrier, that the claimant during the same period of time was free from any disability.
A casual examination of this court's published opinions over the past approximately two and one-half years discloses that this court has repeatedly been called upon to review, and frequently reverse, job search decisions by the deputy commissioners.[10] We believe we can safely say, without overstating it, that of this court's decisions in worker's compensation cases, with and without written opinions, those in which no job search issue was raised by one side or the other would represent the exception, rather than the general rule. The incidence of litigation on this one aspect of worker's compensation cases is not surprising, however, for we find, in spite of the plethora of written opinions on this subject, that it is impossible to find a single, definitive statement of what constitutes an "adequate" job search that will serve as a guide for the adjudication of this issue under all the variables presented by these cases.[11] Furthermore, it appears to us to be virtually impossible for the uncounseled claimant  or for that matter, the counseled claimant  in many instances to be able to predict, with any degree of certainty, just what is required of him in the way of a job search, or indeed, if any is required.[12]
Job search evidence is unique in itself, in that it depends entirely upon the development or "creation" of extrinsic evidence by the claimant, and to some extent, by the E/C. In this respect this type of evidence differs radically from the other evidence, such as the evidence relating to the accident, the nature and extent of injuries and disabilities, and even the evidence as to other factors considered in determining the economic consequences of a claimant's disability.
More importantly, however, we detect from our experience with the hundreds of worker's compensation cases that have been lodged in this court since the 1979 amendments conferred review jurisdiction, that the requirement of a single "trial" on the work search issue places an unrealistic and unreasonable demand upon the deputy commissioner, who often must make a decision that will spell bonanza or forfeiture for one party or the other, based upon evidence which at best is frequently speculative and conjectural.[13]
*926 In summary, it is our considered opinion that there are so many variables connected with the job search requirement that a "false reading" often results from the initial hearing on this issue. We think a far better result can be reached and the justice of worker's compensation adjudication substantially improved, by allowing any deficiencies in a claimant's job search effort to be remedied and corrected by means of a modification petition. We further surmise that this procedure will allow the deputy commissioner to insure that, when the E/C defends on the ground that employment within the claimant's capabilities is available, there will be ample opportunity for the E/C to produce a prospective employer or employers and thereby eliminate the necessity or grounds for a modification petition.[14] Such a result would be entirely in keeping with the remedial purpose and spirit of the law, which is to provide for the disabled worker, and to return the injured or disabled worker to useful employment as soon as practicable.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ROBERT P. SMITH, Jr., C.J., and WIGGINTON, J., concur.
NOTES
[1] In the order following this hearing the deputy commissioner found that claimant made no "in person" applications, made telephone calls from newspaper ads on only three days, and submitted no applications for employment; and further, claimant allowed his real estate license to lapse, sought no work as an inside insurance adjuster, work he had previously done, and made no contact with available rehabilitation programs. This order was not appealed.
[2] In his order following the modification hearing, the deputy commissioner acknowledged that the claimant gave a list of twenty-four companies where he had applied for work, in slightly less than a two month period, and referred to claimant's testimony that the jobs sought were in a managerial or managerial trainee category, many with requirements of heavy lifting, but that he was not offered a job, and from May 8, 1980, made no further attempts to secure work. The deputy commissioner made no ruling on the adequacy of claimant's job search, and, since the cause is not before us on the merits, we are not called upon to do so.
[3] Exxon Co. v. Alexis, 370 So.2d 1128, 1132 (Fla. 1978), reiterated the requirement that in order to justify an award based upon a diminution of wage-earning capacity, "a claimant must show that he has made an effort to test his employability in the open labor market after having reached maximum medical improvement." However, there are a number of criteria by which wage-earning capacity must be measured, and "no single factor is conclusive." Walker v. Electronic Products & Engineering Co., 248 So.2d 161, 163 (Fla. 1971). Of course, claimant's physical or mental condition may be such that the absence of a job search is reasonable and justified. Chicken-`N'-Things v. Murray, 329 So.2d 302 (Fla. 1976); Sizemore v. Canaveral Port Authority, 332 So.2d 23 (Fla. 1976).
[4] See, for example, Commercial Union Assurance Co. v. Hyman, 379 So.2d 456 (Fla. 1st DCA 1980), and Pantry Pride v. Gonzalez, 382 So.2d 818 (Fla. 1st DCA 1980).
[5] See Section 440.15(3)(u), Florida Statutes (1977), providing that "disability," means either physical impairment or diminution of wage-earning capacity, whichever is greater.
[6] The assumption would be one arising by operation of law, however, rather than from the evidence, and the factual realities of claimant's employability might be just the opposite.
[7] These declarations must be read in context with the entire opinion and the specific issues to which they relate. As this court has recently had occasion to point out, workers' compensation proceedings are inherently and uniquely "piecemeal" in nature, for the simple reason that various aspects of a claimant's entitlements "mature" at different times. Hunt v. International Minerals and Chemical Corporation, 410 So.2d 640 (Fla. 1st DCA 1982).
[8] Power v. Joseph G. Moretti, Inc., 120 So.2d 443 (Fla. 1960); and 32 Fla.Jur.2d, Judgments And Decrees, § 99.
[9] See, 32 Fla.Jur.2d, Judgments And Decrees, § 97, and cases cited therein, notes 19, 20, 21.
[10] By rough count, for the years 1980 and 1981, and 1982 to date, there were some 44 written opinions touching on some aspect of the work search requirement. See Workers' Compensation, "Employment Search," Florida Law Weekly.
[11] In addition to the criteria listed in Walker v. Electronic Products & Engineering Co., supra, footnote 3, which naturally vary widely from person to person, the condition of the economy and the locale in which the work search is conducted may create a wide disparity in the extent of the search that might be termed "adequate" or "inadequate." What might be properly considered adequate in Clewiston might well be totally inadequate in Miami, for comparable claimants similarly injured.
[12] We particularly take note of the increasing emphasis upon the requirement that benefits to which a claimant is entitled be made available without requiring the claimant to seek the services of an attorney at every hand. See Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981).
[13] Common sense tells us, for example, that there may be many reasons why a particular person may not be hired for a particular job, and there is no guarantee that the job applicant will be able to learn, much less testify at the hearing, to the real reason why he was not employed. Established case law requires the claimant to show that his inability to secure work is due to his injury, or that because of his injury, he is suffering a loss of wage-earning capacity as to work he is capable of performing. Montgomery Ward and Company v. Hayes, 172 So.2d 581 (Fla. 1965). The nature of these and other work search requirements as a practical matter calls for a great deal of opinion and "hearsay" evidence. It is obviously not practical for a claimant to subpoena 57 different employers to testify why the claimant did not secure a job for which there was an opening. We note in the case before us that, upon objection by the E/C's attorney, the deputy commissioner restricted the claimant's testimony concerning the reasons given by his prospective employers as to why he was not given a job.
[14] We observe that the Supreme Court of Florida has quite recently and explicitly reemphasized the rule that when the claimant affirmatively demonstrates that "some effort" was made to obtain employment within his limitations, the burden shifts to the employer to demonstrate that suitable work is in fact available. Wright v. Gulf and Western Food Products, 401 So.2d 1316, 1318 (Fla. 1981). It follows that when the burden has properly been shifted to the E/C, and the E/C has failed to carry that burden at the initial hearing, then an award based on wage earning capacity loss is justified. In that event, the E/C may utilize modification proceedings to establish a change in circumstances by demonstrating that suitable employment is available to the claimant which would require a reduction in wage earning capacity benefits. Dupont Plaza Hotel v. Schiffman, supra; City of Miami v. Watkins, IRC Order 2-3726 (1979) (and see earlier proceeding, IRC Order 2-3010 (1976)); Gibson v. Minute Maid Corporation, 251 So.2d 260 (Fla. 1971). It should also be noted that the receipt of additional evidence bearing on matters in controversy is within the discretion of the deputy commissioner on remand, unless the court directs otherwise, Tampa Electric Company v. Crosby, 168 So.2d 70 (Fla. 1964); Brock v. Sey Construction Corp., 237 So.2d 160 (Fla. 1970); and the courts on occasion have specifically directed that the parties be given the opportunity to present additional evidence on the issues of claimant's employability. Taylor v. Brennan Construction Company, 143 So.2d 320 (Fla. 1962); Trieste v. Anchell, 143 So.2d 673 (Fla. 1962); Scotty's, Inc. v. Jones, 393 So.2d 657 (Fla. 1st DCA 1981); Pearson v. City of Miami Beach, 399 So.2d 1135 (Fla. 1st DCA 1981).