LARRY G. SMITH, Judge.
The E/C appeal an order entered October 20,1982 awarding temporary total disability benefits and continuing medical treatment by Drs. Reith and Babcock. The sole issue is whether there was a change in condition under Section 440.28, Florida Statutes (1979) justifying modification of a prior order entered on April 21, 1982 denying a claim for additional temporary total disability and additional medical care. We find that the deputy commissioner did not err in modifying the prior order.
The claimant was injured on July 1, 1981 when she fell while mopping a floor. Her claim for temporary total disability benefits and future medical care came on for hearing on April 14, 1982. Based upon the medical evidence from the reports and depositions of the claimant’s authorized physicians, the deputy found that there was “insubstantial competent evidence to support a claim for additional temporary total or additional medical care.” That ruling was not appealed and its correctness is not attacked in the present proceeding.
A brief review of the claimant’s experience in seeking medical help both before and after the hearing on her first claim will aid in understanding the posture of the case as it appeared before the deputy at the hearing on her second claim. The claimant was last seen by her primary, authorized treating physician on November 11, 1981. She had also been referred to two other authorized physicians. Because she received no relief from them, on her own she sought the services of a doctor of her own choosing in Terre Haute, Indiana, who saw her in October, November and December 1981. She was examined on February 2, 1982 by yet another authorized Florida physician, who also could find no explanation for her condition. Nevertheless, the claimant continued to seek medical help, and was finally referred to Dr. Reith, of St. Peters-burg, by the local medical society in Sarasota. Dr. Reith, an orthopedic surgeon, actually first saw the claimant on April 13,1982, the day before the first hearing. From the first, despite knowledge of the extensive work-ups and examinations of other physicians, he was suspicious that claimant had a protruded intervertebral disc. He decided on a course of conservative treatment in the hospital, including physiotheraphy, pelvic traction, bed rest and medication. She was hospitalized on May 12, 1982, but failed to respond to this treatment. Dr. Reith then consulted with Dr. Babcock, a neurosurgeon, who performed another myleogram, and a CAT scan, both of which produced normal findings. The doctors then proceeded with exploratory surgery, which was conducted on May 26, 1982. Protruded discs were discovered at two levels, L — 4 and L-5, and removed. The claimant testified at the second hearing, which was held on September 14, 1982, that the operation had greatly relieved her pain, and she requested that Drs. Reith and Babcock be authorized to continue her medical treatment.
Evidence before the deputy commissioner indicated that the authorized physicians treating and examining the claimant prior to the first hearing apparently performed the proper tests, including a myleogram and CAT scan, with negative results' At the first hearing, the deputy commissioner had before him the testimony of the primary treating physician, Dr. Boring, that if the claimant had a protruding disc, it was “very mild,” if it existed at all. Also produced was testimony or reports from the other doctors to the effect that they could find no organic cause for the patient’s complaints, *723 which included pain in her left hip, left lower extremity, left foot, and pain and tenderness in her low back. None of these physicians felt claimant was disabled.
Following the first hearing, Drs. Reith and Babcock essentially replicated the tests and procedures performed by the other doctors, with the same results. They decided upon surgery, however, after the period of hospitalization and conservative treatment described above failed to alleviate the claimant’s symptoms. When Dr. Babcock, assisted by Dr. Reith, operated on claimant’s back, he found the L-5 disc to be “bulging fairly markedly” and “extremely soft.” The L-4 — L-5 disc was “not bulging as markedly as that noted at L-5 — S-l but was bulging abnormally and was extremely soft.” The conditions they found and surgically treated were diagnosed as the cause of the claimant’s complaints, and were causally related to the accident of July 1, 1981. There is no dispute on these issues.
At the conclusion of the second hearing, the deputy commissioner entered his order finding, among other things: “It is obvious that there has been a change of condition in that the claimant has had surgery for her injuries which are now related to the industrial accident.” He further found that the claimant’s complaints and symptoms “although insusceptible of prior diagnosis and treatment by the other physicians, are credible and comport with logic and reason.” As to this latter finding we observe that it would have been more accurate to state that her condition was insusceptible of prior diagnosis and treatment by the usual and ordinary means, since there is no evidence that exploratory surgery could not have been performed earlier.
We conclude that the evidence supports the deputy’s finding of a change of condition. As stated by the deputy, the claimant has had surgery, and there is no question but that she was disabled during the operation and for the period required for her recovery. However, we also find further support in the record for a finding of change in condition. We first note that the claimant testified very positively at the second hearing that her painful condition had “gotten worse,” and that it “had gotten so bad that I couldn’t stand it. I was crying 90% of the time.” The fact that she underwent back surgery at all is in itself indicative of the intensity of her discomfort.
Were we confronted with the claimant’s testimony of increased pain alone, of course, we would find difficulty in affirming the finding of a change of condition. As this court recently held, the claimant’s own testimony as to increased pain and inability to do work “standing alone,” is insufficient to establish a change in condition. Austin Co. v. Lindenberger, 410 So.2d 601, 602 (Fla. 1st DCA 1982), citing Mahler v. Lauderdale Lakes National Bank, 322 So.2d 507 (Fla.1975), and Cheathem v. Fruit Bowl, Inc., 184 So.2d 171 (Fla.1966). Cheathem is the landmark case on this point. Before attempting to apply the Cheathem rule, however, it is necessary to notice a significant recent ruling by the Florida Supreme Court interpreting the Cheathem decision. In Oglesby v. Southern Bell Tel. & Tel. Co., 397 So.2d 291 (Fla.1981), the court in reversing an order denying modification agreed with the claimant’s contention that Cheath-em does not extend the evidentiary standard for proof of a change in condition “to a rigid requirement of objective manifestations without proper consideration of the treating physicians’ observations and evaluation.” Id. at 292. The court went on to explain that the Cheathem court’s rejection of the claimant’s testimony that his pain was worse in intensity, in the absence of other evidence to support it, “does not mean that increased pain may not produce an externally observable manifestation which, when it is established by competent medical evidence, is ‘other testimony.’ ” Oglesby, at 292.
Applying the rule relied upon by this court in Lindenberger, supra, in the light oí Oglesby, we think the fact that Drs. Reith and Babcock were sufficiently impressed by the claimant’s obviously distressed condition to perform exploratory surgery, in the face of negative indications of organic injury detectable by their own and their predeces *724 sor’s standard diagnostic tests, in itself provides support for the claimant’s testimony as to her greatly increased pain. Furthermore, the claimant’s testimony is also bolstered by the fact that the surgery itself produced objective evidence as to the cause of her symptoms, a factor which we find it difficult to ignore, even though in all candor we find no evidence indicating that if the surgery had been performed prior to the first hearing, the same or similar conditions would not have been discovered. Nevertheless, Dr. Babcock’s description of the abnormalities observable by means of surgery furnished the first concrete evidence of an organic basis for the claimant’s symptoms.
Appellants urge that the claimant should be barred from relief by the “cumulative evidence” rule. We disagree. This rule, stated in its familiar form in City of West Palm Beach v. Chisolm, 405 So.2d 279 (Fla. 1st DCA 1981), cited by appellant, holds that cumulative evidence “which does nothing more than add to or controvert evidence already taken is insufficient to support a modification.” Id. at 280. Appellants’ reliance upon the cumulative evidence rule is misplaced. As pointed out in Flesche v. Interstate Warehouse, 411 So.2d 919 (Fla. 1st DCA 1982), in discussion .of Sauder v. Coast Cities Coaches, Inc., 156 So.2d 162 (Fla.1963) (also cited by appellant here), the cumulative evidence rule is uniquely applicable to petitions for modification based on mistake of fact, but “cannot be applied equally and indiscriminately where the petition is based upon a change in condition.” Flesche at 923. Appellants have also failed to note that the issue in Chisolm was causation, not change of condition. Chisolm correctly held that although the claimant’s hemorrhoid condition had worsened since the first hearing, the claimant “may not now attempt to relitigate the issue of causal connection by the introduction of testimony which is merely more favorable to claimant than that initially presented and which should have been presented initially.” Chisolm, at 280 (emphasis supplied). We do not think the cumulative evidence rule is dispositive in this case.
Under the circumstances presented in this case we are simply not inclined to hold, as appellants would have us do, that the claimant should be barred from relief because she failed to locate on her own, prior to the first hearing, doctors who would perform the exploratory surgery necessary to disclose and treat her compensable injuries. We doubt the wisdom, from a medical standpoint, of placing an injured claimant in a “do or die” position with respect to major surgical procedures. More importantly, we have found nothing in the law that would compel such a result as urged by appellant. Our prior decisions indicate otherwise. See, e.g. General Electric Company v. Osborne, 394 So.2d 1089, 1090 (Fla. 1st DCA 1981):
The change of condition provision applies to those cases in which, at the time of the initial order, claimant failed to show the true extent of the injury either because it was not known or had not manifested itself in sufficient degree to be subject to proof.
We conclude that the order modifying the previous denial of compensation and medical benefits was properly entered so as to conform the benefits awarded to the “existing realities” of the claimant’s disability, consistent with the purposes sought to be accomplished by Section 440.28. Arnold v. Stroud, 221 So.2d 729, 731-732 (Fla.1969).
The order appealed from is AFFIRMED.
ERVIN, C.J., and MILLS, J., concur.