ZEHMER, Judge,
dissenting.
This case illustrates how easily the rights of private citizens may become lost in the administrative process. The summary manner in which the Department of Environmental Regulation (DER) denied appellants a permit to construct a covered platform and walkway over submerged lands owned by them in state-regulated waters exalts administrative procedure over the substantive purpose of the statutes, which is to fairly, but not arbitrarily, protect the environment. DER has violated due process notions of fairness intended to be protected by the Administrative Procedures Act, chapter 120, Florida Statutes, by using the doctrine of res judicata to summarily deny appellant’s application. This action was erroneous because disputed material issues of fact remained to be resolved in a section 120.57(1) formal hearing which, if resolved in appellants’ favor, would render the defense of res judicata inapplicable.
I.
A detailed recitation of the facts is necessary to a clear understanding of the legal issues presented on this appeal.
A.
The appellants, Paul and Ellen Thomson, own land which lies east of the Intracoastal Waterway and adjacent to Jupiter Island Cove in Palm Beach County. In connection with a restaurant project under construction on the land, they applied to DER for a permit to construct, over submerged lands within the boundaries of their property, an octagonal platform dock with roof, measuring thirty-six feet across. This platform would be connected to the restaurant on the uplands by an eight-foot wide platform walkway through mangroves. The entire structure is to be made of wood and would be used by patrons to view the scenic beauty of the mangroves. No docking of boats is contemplated, and no issue regarding pollution by boats is involved. The application for permit was submitted on behalf of the Thomsons by their consulting engineers, Lindahl, Browning, Ferrari, Hellstrom, Inc., to comply with environmental protection requirements in chapters 253 and 403, Florida Statutes (1983). The record compiled by DER does not contain a copy of the complete application.
By letter dated October 14, 1983, DER communicated to the engineers its intent to deny the application “pursuant to Section 403.087 and 253.123, Florida Statutes (F.S.), and Sections 17-4.07 and 17-4.28(11), Florida Administrative Code (F.A.C.)” because:
The proposed roofed platform and walkway will be located over seagrasses. The resultant shading is expected to destroy those seagrasses which, as a base of a detrital food web, contribute to the commercial and recreational shellfish and fishing industry. Seag-rasses also provide habitat and nursery grounds for many marine organisms, consolidate sediments and can improve water quality by removing nutrients from the water and reducing turbidity. As a result of the above cited factors, degradation of water quality is expected. Specific State water quality standards in Sections 17-3.061 and 17-3.121, F.A.C., that would be affected by the completion of this project include the following:
Biological integrity — The Shannon-Weaver diversity index of benthic ma-croinvertebrates shall not be reduced to less than 75% of established background levels.
Transparency — The depth of the compensation point for photosynthetic activity shall not be reduced by more than 10% compared to the natural background.
Turbidity — Shall not exceed 29 Nephe-lomitric Turbidity Units (NTU’s) above natural background.
Nutrients — In no case shall nutrient concentrations of a body of water be *1038 altered so as to cause an imbalance in natural populations of aquatic flora and fauna.
Furthermore, your project will result in the following effects to such an extent as to be contrary to the public interest and the provisions of Chapter 253, F.S.:
The proposed activity would be expected to interfere with the conservation of fish and wildlife to such an extent as to be contrary to the public interest, and will result in the destruction of natural marine habitats, grass for marine life, and established marine soils suitable for producing plant growth of a type useful as nursery or feeding grounds for marine life.
(Emphasis added.) The letter concluded with notice of the right to a section 120.57 hearing if the applicants were displeased with the decision. The only factual findings to support the conclusion of detrimental pollution effects are contained in the first paragraph, which describes direct shading on existing seagrasses.
By letter dated October 27, 1983, to Roy M. Duke of the Southeast Florida District Office of DER, the engineering firm acknowledged the letter of intent to deny and requested “a continuance in your consideration and actions on subject application” because:
We intend to present further detailed information and minor modifications which we believe may have significant bearing on your findings. In order to study potential minor modifications we request a copy of your field report and maps reporting your findings.
We understand that major changes within the same application are discouraged by your agency. We also realize that such major changes would require withdrawal without prejudice and submittal of a new application.
The record does not reflect whether the requested information was ever supplied by DER in response to this request, and such information is not found in the record on appeal.
The contents of the October 14 notice of intent to deny were incorporated by reference into the final order of denial entered by DER on November 7, 1983, which was sent to the Thomsons’ engineering firm with a letter of transmittal dated November 10. The letter stated that the staff at DER “has reviewed your application and can find no minor modifications to make your application permissible. The staff, however, will review your future ideas and changes in a preapplication mode and comment on their potential permissibility” (emphasis added). The engineers were advised to contact Donald R. Deis of the Southeast Florida District Office if they had any questions. They had already discussed this application with Mr. Deis. The Thomsons had been represented up to this point solely by their engineers and had not employed the services of an attorney to litigate their rights to a permit.
B.
Several weeks thereafter, the Thomsons filed another application for permit to construct a modified version of the proposed dock and walkway.[1] The design in the second application was reconfigured and relocated so that neither the platform dock nor the walkway passed over any seagrass beds. The structure was oriented to minimize shadows on existing seagrasses. In addition, a report by an environmental specialist dated January 10, 1984, was prepared after receipt of the first final order for submission to DER in support of the second application. This report indicated that on November 14 and 15 these specialists conducted a survey of seagrass habitats on the subject property. It stated that a qualitative survey of the entire area was initially conducted, and then described the results of that survey. Next, a quantitative survey was made of the seagrasses within the areas of the proposed struc *1039 tures, and the results of this survey were described. The report recommended modification of the location of the proposed structures as a means of minimizing impacts to existing seagrass beds. To what extent, if any, the information presented in this report was considered by DER in its denial of the second application does not appear in either the record or the appealed final order.[2]
By letter dated March 9, 1984, DER again gave notice to the Thomsons’ engineers that it intended to deny this second application. Although the configuration of the proposed structure was changed considerably (one half of the octagonal platform dock was deleted and the route of the platform walkway was changed) and the application was now supported by an environmental engineering study neither available nor considered in connection with the first application, DER characterized this second application as "almost identical to a proposal for a similar structure in the same location ... which was denied on November 7, 1983.” Referring only to “copies of the drawing of the project, the [Oct. 14] notice of intended agency action, and the final order” of November 7, the letter concluded, “The present proposal is not significantly different from the original proposal both in area coverage, water quality impacts and expected habitat destruction. Based on the final order of denial in application number DF500723536, the Department regards that proposal res judicata as to the present proposal.” The reconfiguration and relocation of the proposed structure, however, compelled DER to change its previous conclusion to now read:
The proposed roofed platform and walkway will be located over and near marine bottom capable of supporting seag-rasses. The resultant shading by the structure is expected to destroy existing seagrasses and eliminate the potential for seagrasses to grow in the area.
The letter then continued in substantially the same language as the prior notice, with the single exception that it directed that any petition filed under section 120.57 “should address the res judicata aspects of this denial.”
In response to this letter of denial, the Thomsons on March 12, 1984, petitioned DER for an administrative hearing pursuant to section 120.57(1), Florida Statutes (1983), alleging that whether the proposed structure would cause water quality impacts detrimental to water quality standards or would provide additional marine habitats to offset any disturbances caused by erection of the structure were disputed issues of fact that remained to be resolved. The petition further alleged:
The Department in its intent to deny raises the issue of res judicata by citation to the final order for file number 500723536. Even a cursory review of the application sketches for both files will show a clear difference in the proposed configuration for the structure. A detailed review of the file for the application subject to this petition will show the changed configuration to be the result of an expensive and detailed scientific study. An affidavit was filed in the earlier case and a copy is attached; the original being in the DER file. This affi *1040 davit reflects the confusion involved in final processing of the request for permit. Petitioners are clearly entitled to an administrative hearing under the provisions of Chapter 120, Florida Statutes.
The affidavit referred to was made by an employee of the engineering firm representing the Thomsons and explained that after receiving, on October 17,1983, DER’s October 14 letter of intent to deny, the employee contacted Mr. Deis (the person referred to as the contact in DER’s November 7 letter) to request permission to submit additional information and minor modifications, and that Mr. Deis “stated that DER would put a hold on the application and delay the proceedings to allow for the submission of such additional information and minor modifications.” Based on this conversation, the affidavit explains, the engineers prepared their letter of October 27 and hand delivered it to DER on October 28. Thereafter, the affidavit states, “in total disregard of the statements made by Mr. Deis on October 27,” DER issued its final order, which was received by the engineers on November 14, 1983, without DER having given the engineers “any opportunity to present additional evidence as had been promised on October 27.” The affidavit concluded that had the engineers known that DER would not honor the statement by Mr. Deis, they would have filed a timely request for administrative hearing.
On March 27, 1984, the Secretary of DER issued a “Procedural Order” denying the petition for a section 120.57(1) formal hearing and granting a section 120.57(2) informal hearing because “it appears that the doctrine of administrative res judicata applies to this matter in that the Department has already ruled on the merits of this presently pending application” and “there are no disputed issues of material fact relating to this petition that were not addressed in the previous denial.” The order gave petitioners ten days in which “to file a Memorandum of Law in opposition to the application of res judicata to this matter.” The Thomsons then filed a motion for reconsideration of their request for formal hearing and the memorandum of law required by the above order. The motion and memorandum indicated that petitioner had additional evidence to offer and contended that res judicata is not applicable because (1) the new and revised permit application is substantially different from the previous one, (2) DER failed to provide procedural due process safeguards in the initial permitting proceeding, and (3) regarding the current application, there are disputed issues of fact which entitle petitioners to a 120.57(1) formal hearing.
On May 18, 1984, the Secretary of DER issued a final order denying the second application solely on the basis of res judica-ta. The order found that the Thomsons had adequate notice of their right to an administrative hearing but failed to request a hearing to contest denial of the first application. Referring only to the drawings attached to both applications and the letters announcing DER’s intent to deny, the Secretary found that the second application “is for the same walkway in exactly the same location as was proposed in the first application.” The order further recited, “There have been no new facts, changed conditions or additional submissions by the applicant regarding the walkway.” Nevertheless, since the drawings clearly showed a change in configuration, the Secretary explained that:
“[Ajccording to the permit drawings, the platform is still less than two feet from being directly over the grass beds referenced in the first notice. Petitioners, although having moved the proposed platform from directly over the grassbeds, have not shown how the modification would eliminates (sic) significant shading of the grass beds.”
Stating that “the first notice listed four water quality criteria which would be violated by the project” and that petitioners “failed to state in their memorandum how the water quality of the modified location would be affected in relation to those criteria,” the Secretary found that the proposed “modification is not significant, and the circumstances are otherwise unchanged. Therefore, the doctrine of res judicata is *1041 applicable to this application.” The order then concluded that petitioners had waived their right to a hearing on the merits of their application because “the subsequent application does not constitute a significant change from the first application.”
II.
The Thomsons have appealed this order, arguing that res judicata was erroneously applied by DER for the reasons alleged in the pleadings they filed with DER. Since no record had ever been developed by DER on this matter, appellants made a request pursuant to rule 17-1.90(3), Florida Administrative Code, for “the development of a record pursuant to Section 120.57, Florida Statutes, regarding the above-styled case being appealed.” This request also recited that “as no record was developed pursuant to Section 120.57” prior to final agency action, appellants “request a formal proceeding pursuant to Section 120.57(1).” The Secretary of DER responded by entering an order acknowledging that “no record had been developed pursuant to Section 120.57, Florida Statutes, prior to the final agency action in this matter” and ordered that “the record to be developed in this case will consist of (a) Petition for Administrative Hearing; (b) Procedural Order; (c) Motion for Reconsideration; (d) Petitioner’s Memorandum of Law; and (e) Final Order.”[3] In addition to these documents, the record on appeal also contains copies of documents filed in the Thomson’s appeal to the Board of Trustees of the Internal Improvement Fund, which was dismissed for lack of jurisdiction. These documents include the report of the environmental specialist referred to above.[4]
A.
There is no dispute about the principles of law applicable in this case. The doctrine of res judicata is a common law precept which, by definition, prescribes that an existing final order or judgment rendered on the merits without fraud or collusion is conclusive of the same rights, questions, and facts placed in issue in a subsequent action. 32 Fla.Jur.2d, Judgments and Decrees, § 96. It is an affirmative defense to be asserted by the party relying on the dispositive nature of the prior order, and the party asserting the defense bears the burden of proving all elements essential to the application of the doctrine. Holley v. Universal Rental Properties, Inc., 416 So.2d 861 (Fla. 1st DCA 1982).
Although res judicata may be applied in administrative cases where its application is clearly shown to be appropriate, e.g., Doheny v. Grove Isle, Ltd., 442 So.2d 966 (Fla. 1st DCA 1983); Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648 (Fla. 3d DCA 1982); Clean Water, Inc. v. State Department of Environmental Regulation, 402 So.2d 456 (Fla. 1st DCA 1981); Flesche v. Interstate Warehouse, 411 So.2d 919 (Fla. 1st DCA 1982), the doctrine should be applied in administrative cases with great caution. Coral Reef Nurseries, Inc., 410 So.2d at 654. It is applicable in permitting proceedings such as this only if the second application for permit is not supported by “new facts, changed conditions or additional submissions by the applicant.” Doheny, 442 So.2d at 976. An order denying an application for permit, “while quasi judicial in character, is not res judicata of another application of exactly the same nature subsequently filed” when the latter is accompanied by new facts, changed conditions, or additional submissions. Matthews v. State ex rel St. Andrews Bay Transport Co., 149 So. 648, 649, 111 Fla. 587 (1933); Coral Reef Nurseries, Inc., 410 So.2d at 654.
Res judicata is said to be a “rule of expediency, justice, and public tranquility” and “will not be invoked where it will work an injustice.” Universal Construction Co. v. City of Ft. Lauderdale, 68 So.2d 366 *1042 (Fla.1953); Flesche v. Interstate Warehouse, 411 So.2d at 924. In Flesche the court stated:
This exception appears well-rooted in the law of Florida, as articulated by Mr. Justice Terrell in Wallace v. Luxmoore, 156 Fla. 725, 24 So.2d 302, 304 (1946):
Stare decisis and res adjudicata are perfectly sound doctrines, approved by this court, but they are governed by well-settled principles and when factual situations arise that to apply them would defeat justice we will apply a different rule. Social and economic complexes [sic] must compel the extension of legal formulas and the approval of new precedents when shown to be necessary to administer justice.
Further, in Universal Const. Co. v. City of Fort Lauderdale, 68 So.2d 366, 369 (Fla.1953), the court expressed the view that:
[W]hen a choice must be made we apprehend that the State, as well as the courts, is more interested in the fair and proper administration of justice than in rigidly applying a fiction of the law designed to terminate litigation.
******
... Indeed, this very court, among others, has announced the salutary principle that the doctrine of res judicata should not be so rigidly applied as to defeat the ends of justice.
411 So.2d at 924.
Applying these principles to the facts of this case makes it readily apparent that DER erred in summarily denying the Thomsons’ application on grounds of res judicata.
B.
In the first place, the record fails to show that DER has met its burden of proving the applicability of res judicata. Even though, pursuant to rule 17-1.59, Florida Administrative Code, the Thomsons had the initial burden of presenting information sufficient to establish their entitlement to the requested permit, DER, as the party asserting res judicata, had the burden of establishing a record showing that this affirmative defense could legally serve as the sole basis for denying the application. Holley, 416 So.2d 861. The Secretary’s reliance on the conclusion that petitioners, in their second application and their memorandum of law, had not shown how the modification of design would eliminate shading and affect the water pollution standards referred to in the first order, even if that conclusion were true, does not establish DER's burden of proof since it is nothing more than an attempt to transfer DER’s affirmative burden to the Thom-sons, contrary to law. It was incumbent upon DER to make a proper record of all information considered in its review of the first and second applications in order to establish that its order denying the first application was res judicata as to the second, particularly in view of the Thomsons’ unsuccessful request for a formal hearing at which to present proof of disputed facts in support of their second application. Village Saloon, Inc. v. Division of Alcoholic Beverages and Tobacco, 463 So.2d 278 (Fla. 1st DCA 1985).
There are several critical deficiencies regarding the record made by DER after entry of the final order now under review which preclude affirmance of the application of res judicata. The record does not contain the full applications filed by the Thomsons’ engineers the first or second time, so they cannot be compared. The record does not contain a copy of the DER field report and maps reporting findings of DER which served as the basis for denying the first application and which were requested by the engineers. Contrary to the requirements of chapter 120, no record was prepared before or during the section 120.-57(2) informal hearing (if, in fact, that “hearing” was ever held) showing the evi-dentiary basis for DER’s decision. Village Saloon, Inc., 463 So.2d at 284-285. These deficiencies make it impossible to determine whether DER’s defense of res judica-ta was correctly applied.
*1043 c.
In the second place, DER erroneously-denied the Thomsons’ request for a section 120.57(1) formal hearing on the res judicata defense. Their petition alleged disputed issues of material fact that could only be resolved in a formal fact finding hearing, and a party requesting a 120.57(1) hearing need not adduce proof of the factual dispute as a predicate to establishing the right to such hearing; it is enough that the pleadings show on their face that disputed issues of fact exist. Village Saloon, Inc., 463 So.2d at 283. In the present case, it cannot be denied that the pleadings facially showed that disputed issues of fact existed in a number of respects. Indeed, it would seem to be obvious that whether or not substantial changes were made in the second application is a crucial fact clearly in dispute.
The Thomsons’ petition for a section 120.57 hearing presented substantial questions as to whether res judicata could be appropriately applied in the circumstances of this case. If true, the facts as asserted by the Thomsons would preclude summary denial of the second application. Whether or not the differences between the first and second applications were sufficiently substantial to avoid res judicata was clearly in issue. The facts recited in DER’s letter of intent and incorporated into its final order denying the first application were that “the proposed roofed platform and walkway will be located over seagrasses” and that “the resultant shading is expected to destroy those seagrasses.” DER is required to “state with particularity the grounds or basis” for denial of an application, section 120.60(2), Florida Statutes (1983); therefore, its failure to specify any additional facts precludes consideration of any other factual basis for denial of the permit. Since DER’s order denied the application only because of the shading of existing seagrass beds (said to cause water pollution and damage marine habitat), the Thomsons and their engineers, being advised of this single basis for DER’s objection to the initial application, quite reasonably undertook, before initiating the administrative hearing, to minimize the claimed detrimental effects by altering the design and location of the structure. Whether these changes were substantial enough to accomplish this objective is clearly a question of fact, not law.
Furthermore, the Thomsons indicated in their petition and memorandum of law that they could present additional evidence at a section 120.57(1) hearing to show that the water quality parameters cited by DER in its letter denying the first application would not be violated by the proposed redesigned dock. The Secretary’s decision to the contrary was based entirely on her conclusion that no difference existed between the two applications because “the proposed roofed platform and walkway will be located over and near marine bottom capable of supporting seagrasses” (emphasis added). This shift from concern for existing seagrass beds to concern for potential beds not existing at the time of the application injected new issues of fact not addressed by, and manifestly left undecided by, the first order. Moreover, the Thomsons’ environmental study, made after DER denied the first application, was available for presentation at a formal hearing in support of the second application and obviously did not exist when the first application was considered. Since an adjudication is not conclusive with regard to questions that could not be adjudicated in the action in which it was rendered, Revels Ford Tractor Co. v. Meares, 419 So.2d 1190 (Fla. 1st DCA 1982); 32 Fla.Jur.2d, Judgments and Decrees, § 118, the new environmental study and the Secretary’s new concern for nonexistent seagrass beds constituted “new facts, changed conditions and additional submissions,” which brought the second application within the exception applying to res judicata recognized in Matthews v. State ex rel. St. Andrews Bay Transport Co., 149 So. 648, 111 Fla. (1933) and Doheny v. Grove Isle, Ltd., 442 So.2d 966 (Fla. 1st DCA 1983). See also Clean Water, Inc. v. Department of Environmental Regulation, 402 So.2d 456 (Fla. 1st DCA 1983).
*1044 D.
Finally, DER’s reliance on the doctrine of res judicata to deny the second application is patently unjust under the circumstances shown in this case. Assuming the facts asserted by appellants to be true (which we must in view of DER’s summary denial without a formal evidentiary hearing), the order denying the first application was entered after the Thomsons’ engineers had been assured by Mr. Deis that the application would be held in abeyance while the engineers prepared additional changes for submission to DER. Additionally, DER’s letter forwarding the final order of November 7 stated that DER would nevertheless consider and “review your future ideas and changes in a preapplication mode and comment on their permissibility,” a clear indication that DER had not foreclosed additional submissions by the Thomsons because they had not requested an administrative hearing. To apply the doctrine of res judicata and deny appellants a full evidentiary hearing on the merits of their application under these circumstances clearly works the very type of injustice that caused the court to decline to apply res judicata in Universal Construction Co. v. City of Ft. Lauderdale, 68 So.2d 919 (Fla. 1st DCA 1982). If DER now denies that Mr. Deis made the statements attributed to him, at the very least it should have granted a formal hearing to resolve this disputed issue of fact.[5] If DER now denies that redesign and relocation of the structure and the supporting environmental study do not constitute a material or substantial change in the second application, as alleged by the Thom-sons, it should have granted a formal fact finding hearing to resolve this disputed issue of fact.
E.
Primary reliance by DER on Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648 (Fla. 3d DCA 1982), to support its use of res judicata is misplaced. The facts in that case are clearly distinguishable, principally because the case held that res judica-ta was not applicable under the circumstances shown because the second zoning application differed from the first application. That case did not hold that the factual issue of whether changes submitted with the second application were substantially different could be summarily decided without an evidentiary hearing. Yet that is the unmistakable import of DER’s position and, now, the majority decision in this case.
I cannot agree with the majority’s conclusion that DER’s notice of right to an administrative hearing in the first letter of intent to deny afforded appellants “a fair opportunity for a hearing, and the conclusive effect of DER’s initial adjudication, is not vitiated by appellants’ decision not to request a hearing.” Accepting appellants’ proffered facts as true, there was confusion over how to submit changes in order to meet DER’s objectives. Appellants reasonably relied on discussions with DER’s representative, which misled them into foregoing an expensive evidentiary hearing in order to pursue further discussion with Mr. Deis. The majority’s answer to this contention — the assertion in footnote 3 that appellants should have pursued this matter by direct challenge to the initial order— makes no mention of the above-cited decisions refusing to apply res judicata where it would work a manifest injustice. Uncertainty about the proper procedure to be followed, the misleading nature of the statements by Mr. Deis and the engineer’s understanding that DER preferred substantial changes to be presented in new applications make it manifestly unjust to apply res judicata to deny the Thomsons any evidentiary hearing on the merits of their application.
I also strongly disagree with the majority’s conclusion that:
[I]n the circumstances presented DER was not precluded from applying the doc *1045 trine of res judicata merely because of minor design modifications to the proposed platform, inasmuch as the affected water quality standards, and conservation interests which served as an independent basis for the initial permit denial were considered as impacted by the project in its entirety.
First, the conclusion that the second application represented only minor design modifications which were insufficient to avoid res judicata is in direct conflict with the Supreme Court’s decision in Matthews v. State ex rel. St. Andrew’s Bay Transport Co., 149 So. 648, 111 Fla. 587 (1933), and Clean Water, Inc. v. Department of Environmental Regulation, 402 So.2d 456 (Fla. 1st DCA 1983), because the record is undisputed that the design was changed to meet DER’s specific objections to direct shading of existing seagrass beds and that the applicants sought to present in support of their second application additional evidence which was not available when DER considered the first. Second, the conclusion that no significant change in impact to the project in its entirety will occur as a result of this additional information is made as a matter of law, despite the disputed issues of fact raised by the petition for formal hearing. Third, the reference to affected water quality standards and conservation interests as “an independent basis for the initial permit denial” misinterprets the language of that letter which predicates all detrimental effects on shading of existing seagrasses. The letter makes no mention of any other fact as the basis for affecting water quality standards. It is not stated, for example, that the type of wood used in construction or the manner in which the structure is affixed to the submerged bottom will adversely affect water quality. In fact, DER’s letter states only that four water quality criteria will be affected, without stating that the effect will be detrimental.
To summarize this unduly long dissenting opinion, DER erred in denying the request for a section 120.57(1) formal hearing because appellants’ petition raised substantial issues of fact relevant and material to the application of administrative res judica-ta. DER’s summary application of res ju-dicata without any evidentiary hearing to determine whether the second application substantially differed from the first is completely inconsistent with Matthews, Village Saloon, Inc. v. Division of Alcoholic Beverages & Tobacco, 463 So.2d 278, and Clean Water, Inc. v. Department of Environmental Regulation, (Fla. 1st DCA 1985). If the facts as contended by appellants are found to be true, res judicata is inapplicable under Universal Construction Co. v. City of Ft. Lauderdale, 68 So.2d 366, and Flesche v. Interstate Warehouse, 411 So.2d 919.
For the foregoing reasons, the order denying the Thomsons’ second application should be reversed and the cause remanded for a formal evidentiary hearing consistent with this opinion.

*1046

*1047

. We do not know when it was filed or what it contained since the application was not made a part of the record prepared by DER. The record contains only copies of the diagrams of the structures and seagrass beds filed with the first and second applications.

. The record does reflect, however, that the drawing appended as Exhibit A to this dissenting opinion was prepared as part of the subject report, showed the existing seagrasses in relation to the revised structure, and was necessarily received by DER before the Secretary entered the final order on appeal. The final order recited that the drawing was part of the second application drawings filed with DER and the drawing was incorporated as a portion of exhibit G to the order (R.47-49, Case No. AZ-337). One might reasonably infer from this recitation that the report and its drawings were filed with the second application, since the record before us, as prepared by DER, fails to reveal exactly how or when the report or the drawings were otherwise submitted to DER. The drawing appended hereto as Exhibit B was also prepared as part of the subject report and showed existing seagrasses in relation to the structure as originally planned and submitted with the first application (R.86-93, Case No. BD-330). See footnote 4, page 18, infra. Most assuredly this court can not, for purposes of appellate review, treat these drawings as not having been timely submitted by the Thomsons for consideration by DER before entry of the final order.

. Appellants also moved this court to direct DER to prepare a record on appeal. This motion was denied as moot after DER filed the record now before us.

. DER’s motion to strike this report from the appendix to appellants' brief, served before the record in the latter appeal was filed, was denied by this court.

. It is simply not enough for DER to dispense with the apparently misleading statements by Mr. Deis on the basis that he had no authority to make such a commitment, as DER would have us do, especially in view of DER's directions to the engineers to submit any inquiries concerning the denial to that individual.